437 So.2d 775 (1983)
Lawrence MARKS, et al., Appellants,
v.
CAYO HUESO, LTD., etc., et al., Appellees.
No. 82-1719.
District Court of Appeal of Florida, Third District.
September 13, 1983.
*776 Albury, Morgan & Hendrick and James Hendrick, Key West, for appellants.
Taylor, Brion, Buker & Greene and James C. Pilkey, Miami, for appellees.
Before SCHWARTZ, C.J., and NESBITT and BASKIN, JJ.
NESBITT, Judge.
The question presented for decision is whether, on the facts summarized below, the circuit court properly enjoined the defendants, appellants here, from using the name "Casa Marina" in connection with their condominium development business. Upon a holding that Cayo Hueso, Ltd., (CHL), owner of the Casa Marina Hotel, presented sufficient competent substantial evidence to warrant injunctive relief pursuant to Section 495.151, Florida Statutes (1977), we affirm.
In Key West, Florida is a historic oceanfront hotel called the "Casa Marina." It was built in 1921 by Henry Flagler and for many years thereafter was the center of social life in the nation's southernmost city. The Casa Marina, in its heyday, was internationally known as a symbol of elegance and grandeur in hotels. As time wore on, however, the Casa Marina began to feel the effects of decay and a slowed tourism trade. The hotel building itself was not in use throughout most of the 1960's and 1970's and was even relegated to a troop shelter during the Cuban Missile Crisis. Several attempts at restoring the hotel failed and yet the people of Key West continued to speak of the Casa Marina in almost human terms.
In 1977, CHL purchased the hotel and adjacent properties. CHL's plan was to restore the old hotel building, add a new wing and ultimately to build condominiums on the remaining land. The project received a good deal of publicity in Key West and nationally. Several publications featured articles describing CHL, its individual members and their plans for the hotel.
Restoration of the old wing and the hotel addition were completed in 1978. As evidenced by an award from the Key West Historic Preservation Board and international acclaim in the prestigious Architectural Record and other journals, CHL had succeeded where many others had failed. Amidst great fanfare, the Casa Marina recommenced business as a luxury hotel and CHL began an extensive promotional effort to acquaint the public with its operation. Since re-opening the Casa Marina, CHL has spent more than $600,000 annually to promote the hotel. Part of the marketing strategy is aimed at capitalizing on the history and tradition behind the name Casa Marina.
In early 1980, the defendants placed an advertisement in the Key West Citizen declaring their intention to do business under several fictitious names, one of which was "Casa Marina Developers." Having purchased property less than a mile from the Casa Marina, the defendants erected a sign thereon stating: "Casa Marina Developers presents 168 luxury townhouses... ." Shortly thereafter, CHL informed the defendants of its objection to the use of the name Casa Marina. The defendants continued to use the name, prompting the filing of this lawsuit.
The facts adduced at trial further show that the sign has been a source of constant confusion among the public. Misdirected and misaddressed mail has been one manifestation of this confusion. Letters addressed to Casa Marina Developers have been delivered to the Casa Marina Hotel, and CHL's general partner has received mail addressed to him care of Casa Marina Developers. Employees of the hotel are also faced with the continual confusion of hotel customers concerning the nearby development.
More important to our decision today is evidence demonstrating that, because of problems with the construction of the defendants' condominiums, the public's confusion has had an adverse effect upon the *777 business reputation of CHL and its individual members. Customers have questioned the financial soundness of the Casa Marina Hotel because of the length of time the defendants' project has been dormant, employees of the hotel and CHL have received complaints from purchasers of condominiums at the defendants' development, and some purchasers have even called CHL's office demanding their money back because of the delay in getting construction under way. In addition, the public has associated the idle condominium development with a golf course project undertaken by some principals of CHL which project is totally unrelated to the Casa Marina Hotel.
Section 495.151, Florida Statutes (1977) protects a prior user of a trade name from injury to business reputation or dilution of the distinctive quality of the trade name. To establish a prior use under Section 495.151 it is not necessary that a party register its trade name,[1]Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1168, n. 13 (11th Cir.1982), but it is required that there be an appropriation and actual use of the name and that the public associates the name with the producer of the goods or services supplied. Abner's Beef House Corp. v. Abner's International, Inc., 227 So.2d 865, 867 (Fla. 1969).
In the instant case, it is clear that CHL adopted and fostered the use of the name "Casa Marina" well before the defendants applied the name to their condominium project. CHL spends hundreds of thousands of dollars annually to keep the name Casa Marina before the public eye and in the public mind. There was evidence that the public in fact associates the name Casa Marina with CHL and its principals. Casa Marina is not a generic term and thus is subject to appropriation. Compare, e.g., Consolidated Electric Supply, Inc. v. Consolidated Electrical Distributors Southeast, Inc., 355 So.2d 853 (Fla. 3d DCA 1978). We hold that CHL has established a valid prior use of a trade name protectable under Section 495.151.
Nonetheless, the defendants, relying upon Sun Coast, Inc. v. Shupe, 52 So.2d 805 (Fla. 1951), contend that CHL cannot establish an injury to business reputation where there was no similarity between the defendants' business and that of CHL.[2] Indeed, in Shupe, also a suit between a hotel operator and a real estate developer, our supreme court said, "We cannot see how the public could be deceived by appellees' use of the title `Suncoast' when there is no similarity in the businesses of the parties." Shupe, supra, at 805. However, Section 495.151, enacted after Shupe, see Junior Food Stores of West Florida, Inc. v. Jr. Food Stores, Inc., 226 So.2d 393, 396 (Fla. 1969), has eliminated the common law requirement of showing competition between the parties or a confusion as to the source of goods or services,[3]Abner's Beef House, supra, 227 So.2d at 866. The statute requires quite simply that it appear to the court "that there exists a likelihood of injury to business reputation...." By the evidence presented at trial, CHL has shown not only a likelihood of injury to business reputation but also actual injury to business reputation. Consequently, we affirm the judgment *778 of the trial court and find it unnecessary to discuss the anti-dilution portion of Section 495.151 or the other grounds for injunctive relief raised by the complaint.
Affirmed.
NOTES
[1] It should be noted that neither party to this suit was a registrant pursuant to Chapter 495, Florida Statutes.
[2] CHL has not yet begun its planned condominium development next to the Casa Marina.
[3] Quite arguably, the justices who decided Shupe might have decided our case differently even prior to enactment of Section 495.151. In Shupe, the supreme court affirmed the dismissal of the bill for injunctive relief because the justices could not visualize and were not shown how the public could confuse two dissimilar businesses bearing the same name. See Shupe, 52 So.2d at 806 ("As applied to the particular circumstances of this case we are convinced that appellants have alleged nothing to show that the public would be tricked or appellant's affairs damaged, or even complicated, because a person trading with appellees in real estate might think he was dealing with appellant, a hotel proprietor.") In the present case, CHL has not only alleged but has demonstrated at trial that, whether it be because of the proximity of the two businesses or because of the celebrity and near anthropomorphism of the Casa Marina, the public has been deceived by the defendants' use of that name.