523 So.2d 624 (1988)
GAETA CROMWELL, INC., Lou Gaeta Development Company, and Fischer-Gaeta-Cromwell, Inc., Appellants/Cross Appellees,
v.
BANYAN LAKES VILLAGE, a Joint Venture, by and between Middlesex Development Corporation and B & S Delray Ventures, Inc., a Florida Corporation, D/B/a Congress Park and Congress Park South, Appellees/Cross Appellants.
No. 4-86-2884.
District Court of Appeal of Florida, Fourth District.
March 2, 1988.
On Denial of Rehearing May 4, 1988.
Jack S. Cox of Merola, McCarthy & Cox, P.A., Palm Beach Gardens, and John Beranek of Klein & Beranek, P.A., West Palm Beach, for appellants/cross appellees.
Joel L. Roth of Siegel & Lipman, Boca Raton, for appellees/cross appellants.
HERSEY, Chief Judge.
This is an appeal from an order granting a temporary injunction. A cross appeal objects to the amount of the bond.
The issue is whether the name "Congress Park" is a trade name which, under the circumstances of this case, entitles one user to protection against use of the trade name by another.
Appellees, plaintiffs below, are the owners and developers of "Congress Park," which is an office building complex located on Congress Avenue in Delray Beach. Appellants, defendants below, are the owners and developers of "Congress Park" which is an office building complex located on Congress Avenue in Riviera Beach. Appellees filed a two-count complaint alleging in count I a cause of action under section 495.151, Florida Statutes (1985), and in *625 count II an action for common law unfair competition. They also filed a motion for a temporary injunction alleging, inter alia, that they had used the name "Congress Park" before appellants had, and that appellants' use of the name would cause injury to appellees' business, dilute the distinctive quality of their trade name, and cause them irreparable harm.
At a hearing on the motion for temporary injunction, the president of one of the appellee corporations testified that he had filed an affidavit under the fictitious name statute, and appellees had started using the name "Congress Park" in 1981. Since that time appellees had advertised extensively using the name, both locally and nationwide. Approximately six to ten thousand dollars per month was spent on such advertising and promotions. Since the appellants had started their building project (appellants stipulated that their use of the name "Congress Park" was subsequent to the appellees' use) appellees had received telephone calls from at least two real estate leasing agents asking if they were involved with the "Congress Park" in Riviera Beach.
The president of one of the appellant corporations testified that they had not yet advertised using the "Congress Park" name, but had sent brochures using the name to real estate brokers in the beginning of 1986. He stated that he was unaware of the "Congress Park" in Delray, but he did know of another office building complex called "Congress Park" in Palm Springs, owned by the Satter Companies, which he thought had existed since about 1979-1980.
After a hearing on the motion a temporary injunction was granted and bond was set at $500,000. This appeal followed.
The trial court did not find it necessary to consider the common law tort of unfair competition. Relief was predicated solely upon section 495.151, Florida Statutes (1985), which provides:
Injury to Business Reputation; Dilution.  Every person, association, or union of workingmen adopting and using a mark, trade name, label or form of advertisement may proceed by suit, and all courts having jurisdiction thereof shall grant injunctions, to enjoin subsequent use by another of the same or any similar mark, trade name, label or form of advertisement if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark, trade name, label or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.
Appellees' position is that they adopted and used a trade name and are entitled to protection against its dilution. Ancillary questions are whether injury must be shown and how much protection is to be afforded a particular trade name.
We find no support for and therefore reject appellants' position that only a first user may complain of subsequent use by another. We also reject appellants' argument that failure to "register" the trade name in accordance with chapter 495, Florida Statutes, precludes relief. See Marks v. Cayo Hueso, Ltd., 437 So.2d 775 (Fla. 3d DCA 1983).
The question, then, is whether appellants' use of the trade name "Congress Park" dilutes or lessens the uniqueness of the trade mark which was in previous use by appellee.
The primary significance of "dilution" appears to be the uniqueness/distinctiveness of the trade name. In Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1168 (11th Cir.1982), the court stated that dilution occurs "when the use of a name or mark by a subsequent user will lessen the uniqueness of the prior user's name or mark." In Freedom Savings and Loan Association v. Way, 757 F.2d 1176, 1186 (11th Cir.), cert. denied, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985) (citations omitted), the court stated that
[d]ilution requires some proof that the use of a trademark decreases its commercial value. If the plaintiff holds a distinctive trademark, it is enough that *626 the defendant has made significant use of a very similar mark... . On the other hand, where the mark is a weak one that lacks much distinctiveness, the mere use of a similar mark will not establish loss of commercial value.
(Emphasis added.)
In the instant case, the appellees presented no evidence of decreased commercial value of the trade name. There was, however, evidence that the appellants had made significant use of the same trade name. A preliminary question we must determine, therefore, is whether "Congress Park" is a "distinctive" and/or "strong" trade name.
The court in Freedom Savings and Loan stated that "the strength of a mark depends on the extent of third party usage and the relationship between the name and the service or good it describes. If a name is used by third parties other than the infringer, then it is less strongly protected than it would otherwise be." 757 F.2d at 1182. In the instant case there was evidence that the trade name was being used by a third party (the "Congress Park" in Palm Springs). This single instance of third-party use does not necessarily preclude protection of the trade name, however. See Safeway, 675 F.2d at 1165 (trade name "Safeway" was entitled to protection despite the fact that several other businesses also used the word "Safeway" in their names).
In Freedom Savings and Loan, 757 F.2d at 1182 (citations omitted), the court stated that
[t]he primary indicator of trademark strength measures the logical correlation between a name and a product. If a seller of a product or service would naturally use a particular name, it is weakly protected. The relationships between names and products fall into several classifications, each one more heavily protected than the last: generic, descriptive, suggestive, arbitrary or fanciful, and coined.
[Generic marks refer to a particular genus or class of which an individual service is but a member; such marks may never receive servicemark protection. Descriptive marks directly describe a characteristic or quality of the service, and can only be protected if they have acquired a "secondary meaning." "Vision Center," when used to describe a place to purchase eyeglasses, would be a descriptive name. Suggestive marks subtly connote something about the service so that a customer could use his or her imagination and determine the nature of the service. The term "Penguin" would be suggestive of refrigerators. Two final categories receive the strongest legal protection. An arbitrary or fanciful mark is a word in common usage applied to a service unrelated to its meaning; "Sun Bank" is such an arbitrary or fanciful mark when applied to banking services. Last, a coined name would be a word invented in order to identify the product or service, such as Kodak or Xerox. These categories have been characterized as "central tones in a spectrum." (Citations omitted.)]
Appellants contend that "Congress Park" is generic and descriptive and has not acquired a secondary meaning, and therefore cannot be protected. We disagree and conclude that "Congress Park" is arbitrary, as both words are in common usage, and are applied by appellees to things (office buildings) which are unrelated to the words' common meanings.
It is true that the office buildings are geographically located on "Congress" Avenue. As appellees point out, however, "Congress" has meaning apart from the name of the street. Also, any association of the word "Congress" with the street of that name is of local importance only, and appellees' market is nationwide.
Since the trade name "Congress Park" is arbitrary, it should receive strong protection. Such protection should be somewhat lessened due to the existence of a third-party user, but not enough, we believe, to prevent it from being considered "strong" and "distinctive." Since the trade name is strong and distinctive, mere "significant use" of the name by the defendant is *627 enough to establish decrease in its commercial value, and therefore "dilution." See Freedom Savings and Loan, 757 F.2d at 1186.
In view of the above, we conclude that there was a likelihood of dilution of the distinctive quality of appellees' trade name, and therefore the trial court did not err in granting the temporary injunction pursuant to section 495.151, Florida Statutes.
We agree with appellants that it was not established below that plaintiffs' "business reputation" was likely to suffer injury due to defendants' use of the name "Congress Park." In Safeway, 675 F.2d at 1168, the court stated that Safeway's receipt of a creditor's dunning letter that should have gone to the defendant was sufficient to show a likelihood of damage to their business reputation. In Marks v. Cayo Hueso, 437 So.2d at 777, the court stated that the fact that the plaintiff's customers had questioned the plaintiff's financial soundness due to the length of time which the defendants' project had lain dormant established that the defendant's use of the plaintiff's trade name had an adverse effect on the plaintiff's business reputation. Here, however, no evidence whatsoever was presented to show that plaintiffs' business reputation was likely to be injured. At most, plaintiffs presented evidence of likelihood of confusion by the public between the two office complexes.
In its order granting the temporary injunction, the court states that "there exists a likelihood of injury to Plaintiffs' business reputation or of dilution of the distinctive quality of Plaintiffs' trade names... ." (Emphasis added.) Since this language simply quotes from section 495.151, we conclude that the order is not in error, although we also conclude that there was no showing of a likelihood of injury to appellees' business reputation. Since there was "dilution," the injunction was appropriate.
Cross appellants (appellees) contend that the bond set by the trial court was excessive and should have been limited to out-of-pocket expenses incurred by cross appellees. We disagree. The purpose of an injunction bond is to provide a fund in a sufficient amount to cover the costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined. Fla.R.Civ.P. 1.610(b). Fixing of the amount of an injunction bond is a discretionary matter. Metropolitan Dade County v. Parkway Towers Condominium Association, 281 So.2d 68 (Fla. 3d DCA 1973), cert. discharged, 295 So.2d 295 (Fla. 1974). Just as the appellees successfully argued in securing a temporary injunction, a trade name has substantial value and in many cases is closely connected to the success of the business venture in question. The trial court acted well within its discretion in setting the amount of the bond to protect the appellants from their loss of use of the trade name should they ultimately prevail on the merits.
AFFIRMED.
ANSTEAD and LETTS, JJ., concur.

ON REHEARING
PER CURIAM.
The petition for rehearing is denied.
HERSEY, C.J., and LETTS, J., concur.
ANSTEAD, J., concurs specially with opinion.
ANSTEAD, Judge, concurring specially.
I agree that the petition for rehearing should be denied, but I also agree with appellants' request that we clarify our opinion to reflect that neither the conclusions reached by the trial court in granting a temporary injunction nor the decision of this court in upholding the trial court's decision has any binding effect on the trial court's ability to consider the issues anew upon final hearing.