INVESTACORP, INC., Plaintiff,

v.

**ARABIAN INVESTMENT BANKING CORPORATION (INVESTCORP) E.C. and Investcorp International, Inc., Defendants.**

**No. 88–1962–CIV.**

United States District Court, S.D. Florida.

Sept. 5, 1989.

**720**

Richard Ross, Miami, Fla., for plaintiff.

Rudolph F. Aragon, Coffey, Aragon, Martin & Burlington, P.A., Miami, Fla., and Wesley G. Howell, Jr., Gibson, Dunn & Crutcher, Washington, D.C., for defendants.

### MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

SCOTT, District Judge.

Plaintiff, Investacorp, Inc. ("Investacorp"), instituted this action against Defendants, Arabian Investment Banking Corporation (Investcorp) E.C. ("Investcorp E.C.") and Investcorp International, Inc. ("Investcorp International"), claiming: (1) service mark infringement under section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (Count I); (2) federal common law unfair competition (Count II); (3) federal common law service mark infringement (Count III); (4) Florida common law service mark infringement (Count IV); (5) Florida common law unfair competition (Count V); and (6) violation of the Florida anti-dilution statute, Fla.Stat. § 495.151 (Count VI). The case is before the Court on cross motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### I. *Background*

Plaintiff Investacorp is a Florida corporation whose primary business is that of a financial services company providing services as a broker/dealer and as a financial intermediary between individuals, corporations and institutions seeking investment opportunities through a nationwide network of licensed registered representatives. Defendant Investcorp E.C. is an investment bank headquartered in Manama, Bahrain. It provides investment and advisory services in real estate, direct investment, portfolio investment, treasury and regional banking investment activities for a broad range of investors throughout the Gulf region. Defendant Investcorp International is a wholly-owned subsidiary of Investcorp E.C. and is headquartered in New York.

In June 1987, Investcorp E.C. filed an application for federal registration of the "Investcorp" mark. Four months later, in October 1987, Investacorp sought registration of its mark "Investacorp", and in February, 1988 filed a Notice of Objection to Investcorp E.C.'s registration request.[1] This suit followed.

On the eve of trial and with discovery completed, both plaintiff and defendants moved for summary judgment. Plaintiff has moved for partial summary judgment as to its claims for service mark infringement. Simultaneously, Defendants have moved for an order granting summary judgment in their favor as to all claims asserted against them. The Court heard oral argument on these motions on August 29, 1989.

### II. *Legal Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

**1.** Proceedings regarding the parties' registration applications have been stayed pending resolution of this case.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden is on the moving party to demonstrate the absence of a genuine issue as to any material fact. *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406 (5th Cir.1980). This burden "may be discharged by showing—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 106 S.Ct. at 2553, citing Fed.R.Civ.P. 56(e). Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

### III. *Analysis*

#### A. *Plaintiff's Claims for Federal Common Law of Unfair Competition and Service Mark Infringement*

■ Initially, defendants argue that the federal common law claims of unfair competition and service mark infringement asserted by plaintiff in Counts II and III of the amended complaint do not state a claim and should be dismissed because no such common law exists. Although plaintiff contends that there in fact exists a federal common law of service mark infringement and unfair competition, it has not cited a single post-*Erie* case sustaining a claim for federal common law service mark infringement of unfair competition, and the Court's independent research did not reveal any.[2]

A dual system of federal and state law provide the legal grounds for service mark protection. At the federal level, the Lanham Act applies, and at the state level, both the common law of unfair competition and a network of statutory laws apply. Gilson, *Trademark Protection and Practice*, Volume 1, § 1.04. Thus, while infringement of a federally unregistered trademark may give rise to causes of action under (a) Section 43(a) for federal unfair competition, (b) state unfair competition common law, and (c) a state statute, it does not give rise to causes of action for either federal common law unfair competition or service mark infringement. In sum, federal common law does not serve as a basis for service mark protection, and any development of such a body of law was arrested by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *Id.* at § 7.01[1]. *See also Skil Corporation v. Rockwell Int'l. Corp.*, 375 F.Supp. 777, 782 (N.D.Ill.1974) (In enacting Section 43(a) of the Lanham Act, "Congress undoubtedly recognized and intended to remedy the destructive effect that *Erie* had upon the development of a uniform federal common law of unfair competition...."). Counts II and III of plaintiff's amended complaint must therefore be dismissed and summary judgment entered in favor of defendants as to those two counts.

#### B. *Plaintiff's Claim Under the Lanham Act and its Florida Common Law and Statutory Claims*

The remainder of plaintiff's amended complaint consists of claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Florida's common law of trademark infringement and unfair competition, and Florida's anti-dilution statute, Fla.Stat. § 495.151. To establish these claims, plaintiff must prove a protectible interest in the mark allegedly infringed.[3] *American Tele-*

---

**2.** At oral argument, plaintiff cited *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366 (1st Cir.1980) and *In re Sawyer Electrical Mfg. Co.*, 144 F.2d 893 (C.C.P.A.1944) in support of its position. Those cases, however, do not stand for the proposition that the federal common law of trademarks and unfair competition developed prior

to the Supreme Court's decision in *Erie* applies today.

**3.** To prove a protectible interest, plaintiff must establish that (i) it actually used the mark "Investacorp" before the defendants began using the "Investcorp" mark, and (ii) the "Investacorp"

*vision & Communications Corp. v. American Communications & Television, Inc.,* 810 F.2d 1546, 1548 (11th Cir.1987); *Creamette Co. v. Conlin,* 191 F.2d 108, 111–12, (5th Cir.1951), *cert. denied,* 342 U.S. 945, 72 S.Ct. 560, 96 L.Ed. 703 (1952) (applying Florida law); *Abner's Beef House Corp. v. Abner's Int'l., Inc.,* 227 So.2d 865, 867 (Fla.1969); *American Bank v. First American Bank & Trust,* 455 So.2d 443, 445–46 (Fla. 5th DCA 1984); *Marks v. Cayo Hueso, Ltd.,* 437 So.2d 775, 777 (Fla. 3d DCA 1983).

### 1. Categorizing the Mark

■ To ascertain whether plaintiff has a protectible property right in the term "Investacorp", the Court must first categorize it. The cases have identified four categories of terms with respect to service mark protection: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. These categories indicate different levels of protectability. They are summarized as follows in *American Television and Communications Corp. v. American Communications and Television, Inc.,* 810 F.2d 1546, 1548–49 (11th Cir.1987) (citations omitted):

A generic name suggests the basic nature of the article or service. Most courts hold that a generic term is incapable of achieving trade name protection. A descriptive term identifies a characteristic or quality of an article or service, and may become a protectible trade name only if it acquires a secondary meaning. The distinction between descriptive and generic terms is one of degree. A suggestive term suggests, rather than describes, a characteristic of the goods or services and requires an effort of the imagination by the consumer in order to be understood as descriptive; it requires no proof of secondary meaning to be protectible. An arbitrary or fanciful name bears no relationship to the product or service and is also protectible without proof of secondary meaning.

Defendants assert that plaintiff cannot establish a protectible interest in the mark allegedly infringed because the term "Investacorp" falls into the descriptive category of terms with respect to legally protectible interests. This requires plaintiff to establish a secondary meaning to the term in order to establish a protectible interest. Plaintiff argues that "Investacorp" is not a descriptive term but an arbitrary or, at least, a suggestive term for which no showing of secondary meaning is necessary.

In determining the mark's status, the Court rejects outright plaintiff's contention that the term "Investacorp" is an arbitrary term. Unlike such marks as EXXON, KODAK, SHELL, CAMEL, and DREFT, which are meaningless in relation to the products, the term "Investacorp" bears a relationship to the services being offered by plaintiff. The only real issue, therefore, is whether "Investacorp" is a descriptive or suggestive term.

The Court concludes that the term "Investacorp" is a descriptive term. Without the use of imagination, the term forthwith describes the essence of plaintiff's business and conveys to the unknowing consumer an immediate idea of the services being offered by plaintiff. "Because the name does not require 'imagination, thought and perception to reach a conclusion as to the nature of the goods' or services, it cannot be considered a suggestive term." *Vision Center v. Opticks, Inc.,* 596 F.2d 111, 116 (5th Cir.1979) (citing *Stix Products, Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp. 479, 488 (S.D.N.Y.1968)).

Another test used by the Courts in determining the descriptiveness of a mark is the extent to which those engaged in similar businesses have used the phrase. *Vision Center,* 596 F.2d at 117. Here, over eighty listed NASD-registered broker-dealers use the term "invest" in their names. Addi-

---

mark is either inherently distinctive or had acquired a secondary meaning prior to the date on which defendants commenced using the same or similar mark." *Co–Rect Products, Inc. v. Marvy! Advertising Photography, Inc.,* 780 F.2d 1324, 1330 (8th Cir.1985); *Scott Paper Co. v.*

*Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1231 (3d Cir.1978); *Abner's Beef House Corp. v. Abner's International Inc.,* 227 So.2d 865, 867 (Fla.1969). Defendants concede that plaintiff used the mark "Investacorp" before they began using the "investcorp" mark.

tionally, the T & T Trademark Research Report submitted by defendants reveals an "Investcorp" in Minnesota, an "Investcorp & Associates" in Dallas, an "Investicorp" in New York and Chicago and another company that sought to register "Investacorp" before plaintiff did. These facts further support the descriptiveness of plaintiff's mark. *See Vision Center,* 596 F.2d at 117 & n. 15 (the court considered that the name "Vision Center" had been adopted by a large number of optical stores in other parts of the nation in finding that name to be descriptive); *Telemed Corp. v. Tel–Med, Inc.,* 588 F.2d 213, 218 (7th Cir.1978) (court considered that the terms "tel" and "med" likely to form part of trademark used by competitors, and 254 business names began with the prefix "Tel" or "Tele" in the Manhattan Telephone Directory); *American Heritage Life Insurance Co. v. Heritage Life Ins. Co.,* 494 F.2d 3, 11 (5th Cir.1974) (court considered that the word "heritage" is used in the corporate names of insurance companies all over the country in finding that term to be descriptive). These facts further support the Court's conclusion that "Investacorp" is a descriptive term.

2. Is there sufficient evidence of secondary meaning?

■ Although the mark "Investacorp" is descriptive, it may rise to the level of protectability if shown to have acquired a secondary meaning "prior to the date on which the defendant[s] commenced using the same or similar mark." *Co–Rect Products, Inc. v. Marvy! Advertising Photography, Inc.,* 780 F.2d 1324, 1330 (8th Cir. 1985). To establish that its mark has acquired a secondary meaning, plaintiff must show that the consuming public connects the mark with plaintiff rather than the services offered. *American Television,* 810 F.2d at 1549. Only where the plaintiff can show that "the corporate name denotes to the consumer or purchaser 'a single thing coming from a single source'" can a secondary meaning be shown. *American Television,* 810 F.2d at 1549; *American*

*Heritage,* 494 F.2d at 12; *Aloe Creme Laboratories, Inc. v. Milsan, Inc.,* 423 F.2d 845, 850 (5th Cir.), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970). The intentions or desires of the creator of the mark or its owner are irrelevant; the consumer's state of mind is paramount. *Co–Rect Products,* 780 F.2d at 1330.

The Eleventh Circuit in *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1513 (11th Cir. 1984) identified four types of evidence that are considered in ascertaining whether secondary meaning has attached to a mark: (1) the length and manner of the mark's use; (2) the nature and extent of advertising, promotion and sale; (3) the plaintiff's efforts to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture.[4] To establish secondary meaning for a descriptive term, "a high degree of proof is necessary." *American Television,* 810 F.2d at 1549 (citing *Vision Center,* 596 F.2d at 118 and *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F.2d 3, 12 (5th Cir.1974)). This high standard of proof must be considered by the Court on the parties' motions for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In evaluating a claim of secondary meaning, consumer surveys are recognized as the most direct and persuasive evidence of secondary meaning. *See, e.g., Vision Center,* 596 F.2d at 119 ("In assessing a claim of secondary meaning, the chief inquiry is the attitude of the consumer toward the mark; does it denote to him a 'single thing coming from a single source'? Short of a survey, this is difficult of direct proof.") (quoting *Aloe Creme Laboratories, Inc. v. Milsan, Inc.,* 423 F.2d 845 (5th Cir.1970)). During oral argument, plaintiff conceded that here there is no evidence involving an objective survey of the public's perception

4. The relevant time period for determining the secondary meaning factor here is 1983, the date defendants first used the mark "Investcorp" in the United States. *See Scott Paper,* 589 F.2d at

1231; *Chase Federal Savings & Loan Assoc. v. Chase Manhattan Financial Services,* 681 F.Supp. 771, 779 (S.D.Fla.1987).

of the name "Investacorp."[5] Instead, the only evidence offered to show secondary meaning was the extent of plaintiff's advertising and the growth of its sales.[6]

The amended complaint establishes that in the years 1977 through October, 1983, plaintiff spent a total of $4,323 in advertising. Plaintiff's estimated volume of sales grew from $74,825 in October 1978 to more than $27 million in October 1983.

In considering plaintiff's evidence of advertising expenditures, the Court emphasizes that "it is not the amount of money spent on advertising that is important, but the results achieved with the money spent." *Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785, 788 (5th Cir.1984) (citing *Aloe Creme Laboratories, Inc. v. Milsan, Inc.*, 423 F.2d 845, 850 (5th Cir.1970). Here, there is insufficient evidence that the purchasing public has come to link the term "Investacorp" with plaintiff. Other than its own speculation, plaintiff presented no evidence of the meaning of its name to any investors. There is no testimony of any consumers that "Investacorp" means the plaintiff's business to them. Given this record, the Court cannot conclude that plaintiff's evidence of advertising is sufficient to establish that its promotional efforts were successful in altering the meaning of "Investacorp" to the consuming public.

As to the growth of plaintiff's sales, the Court finds the same weakness as it did with the proffered evidence of advertising. More is needed to establish the necessary consumer association than the mere proof of sales and growth under the mark "Investacorp" because such proof only measures plaintiff's effort to establish secondary meaning—it does not determine its success. There must also be evidence that the public associates the name "Investacorp" with plaintiff. *See American Television,*

810 F.2d at 1549 (evidence of annual reports insufficient without surveys or other evidence of the meaning of plaintiff's name to plaintiff's suppliers and investors). Here, however, there is insufficient evidence establishing that association. As previously noted, other than its own speculation, Plaintiff presented no evidence of the meaning "Investacorp" to any investors. There is no testimony that "Investacorp" means the plaintiff's business to them.

Although not relied on by plaintiff as evidence of secondary meaning, the Court notes that the evidence of actual *consumer* confusion is scant. The evidence in the record consists mostly of anecdotal testimony of plaintiff's own registered representatives that they were unsure and/or concerned as to whether plaintiff was related to defendants.

The remaining evidence amounts to only two alleged incidents of uncertainty as to whether there was a connection between plaintiff and defendants. One of the incidents was related by Mr. John Porter, an employee of FSC Securities Corporation, one of plaintiff's competitors, who testified in deposition that he once contacted plaintiff concerning what he believed to be a NASD compliance problem involving plaintiff, but which actually involved one of the defendants. The other incident involved the testimony of Mr. John Van Heuvelen, the Unit Investment Trust Department's manager at Dean Witter Reynolds Inc., another one of plaintiff's competitors. Mr. Van Heuvelen testified that he had read a *Forbes* magazine article that he believed was about plaintiff when in fact, it was about defendants.

These instances of confusion were short-lived and involved no customers of plaintiff's business. This evidence is therefore insufficient to establish secondary mean-

---

**5.** This lack of evidence alone is a "significant hindrance to meeting the standard of proof required." *Security Centers, Ltd. v. First National Security Centers,* 750 F.2d 1295, 1301 (5th Cir. 1985) (citing *Vision Center,* 596 F.2d at 119).

**6.** Prior to oral argument, plaintiff failed to point out to the Court in its summary judgment mem-

oranda any evidence of secondary meaning. Instead, plaintiff precariously chose to merely assert that "Investacorp" is not a descriptive term and that even if the term "Investacorp" is descriptive, it is entitled to a trial to prove that the term has acquired a secondary meaning.

ing. *See Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir.1982) ("Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight ... while confusion of actual customers of a business is worthy of substantial weight.")

The evidence here falls short of demonstrating that the primary significance of the name "Investacorp" in the minds of consumers of financial products and services is not the product, broker-dealer services, but the producer of the product, Investacorp, Inc. *See Security Centers,* 750 F.2d at 1301 (evidence of the sums spent in advertising, of plaintiff's use of the mark for two years before defendant set up shop, and of defendant's alleged imitation or appropriation of the mark insufficient to establish secondary meaning in the absence of a consumer survey). *See also Vision Center,* 596 F.2d at 119 (testimony of seven customers that "Vision Center" meant the plaintiff's business to them, testimony that plaintiff had occasionally received mail addressed to other establishments that had "vision" in their name, evidence that a customer of one of defendant's stores in another city believed the plaintiff and defendant were associated, and recognition of plaintiff's long use of the term insufficient to establish secondary meaning without any consumer survey). Given plaintiff's failure to meet its substantial evidentiary burden as to the issue of secondary meaning, it is appropriate for this Court to deny plaintiff's motion for partial summary judgment and grant defendants' motion for summary judgment.[7]

### IV. *Conclusion*

For the reasons stated above, it is

ORDERED and ADJUDGED as follows:

1. Plaintiff's motion for partial summary judgment is denied.

2. Defendants' motion for summary judgment as to all claims asserted against them is granted. Summary judgment is entered in favor of the defendants and against plaintiff on each of the six counts contained in the amended complaint.

3. The amended complaint is dismissed with prejudice.

4. Plaintiff's Motion to Compel the Production of Documents and Things is denied as moot.

5. Defendants' Motion In Limine to Exclude Undisclosed Witnesses is denied as moot.

DONE AND ORDERED.

---

7. Since the Court concludes that the plaintiff has not met its substantial evidentiary burden with respect to the secondary meaning issue, it need not address the issues of likelihood of confusion, likelihood of injury to business reputation, dilution or abandonment.