561 So.2d 368 (1990)
CUSHMAN & WAKEFIELD, INC., James P. Beresford and Roger Peterson, Appellants,
v.
Cletus COZART and Patricia Cozart, His Wife, Appellees.
No. 89-03458.
District Court of Appeal of Florida, Second District.
May 4, 1990.
*369 Raymond T. Elligett, Jr., Lee D. Gunn, IV and Neal A. Sivyer of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for appellants.
James S. Moody, Jr., of Trinkle, Redman, Moody & Swanson, P.A., Plant City, for appellees.
ALTENBERND, Judge.
The appellants challenge a non-final order denying their motion to modify a temporary injunction. Their motion requested a modification of the terms of the injunction establishing the amount of the injunction bond. When the temporary injunction was entered in October 1988, the trial court set the bond at $10. Although the amount of a bond is typically a matter within the trial court's sound discretion, we reverse the trial court's refusal to increase this nominal bond because it is tantamount to no bond under the facts of this case. Wasserman v. Gulf Health, Inc., 512 So.2d 234 (Fla. 2d DCA), review denied, 518 So.2d 1279 (Fla. 1987).
The appellants own and operate a shopping mall adjacent to Mr. and Mrs. Cozarts' trailer park.[1] The mall was constructed with 600,000-gallon underground holding tanks to collect rain water and high-capacity pumps to discharge the rain water from the tanks into a culvert which borders on the Cozarts' property. The culvert proved to be inadequate to handle additional rain water, and thus the Cozarts' property was often flooded by the discharge. The Cozarts' *370 verified complaint alleges that this flooding did not occur until after the construction of the mall.
In September 1988, the Cozarts filed a two-count action against the mall owners seeking damages and injunctive relief. In October 1988, after a hearing, the trial court entered a temporary injunction which prevents the mall owners from pumping storm water onto, or otherwise flooding, the Cozarts' property. The mall owners were given notice of the hearing, but did not attend. As a condition of the injunction, the trial court ordered the Cozarts to post a $10 injunction bond. The mall owners did not challenge the amount of the bond immediately after it was set.
In November 1989, the mall owners, through substituted counsel, moved to increase the amount of the injunction bond. The mall owners sought this increase after the Florida Supreme Court's decision generally limiting the damages recoverable for a wrongful injunction to the amount of the bond. Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So.2d 1018 (Fla. 1989). Their motion was supported by two affidavits: one, from a real estate broker, stating in general terms that this legal dispute has "chilled" any possible sale of the mall property; and the other, from the mall owners' substituted trial attorney, stating that the mall owners have incurred approximately $15,000 in attorneys' fees and other costs. The Cozarts did not file any opposing affidavits.
The trial judge denied the mall owners' motion to increase the amount of the injunction bond because he determined that the Cozarts have a very good chance of prevailing on the merits and, thus, he doubted that there was a significant risk that the temporary injunction would ever be declared wrongful. The mall owners argue that a trial court cannot consider this factor in determining the amount of the injunction bond because it is irrelevant to the projection of their potential costs and damages.
A trial court must require the movant to post an injunction bond before it enters a temporary injunction. Fla.R. Civ.P. 1.610(b); Richardson v. Upchurch, 452 So.2d 1117 (Fla. 2d DCA 1984). The purpose of this bond is to provide a sufficient fund in order to cover the adverse party's costs and damages if the injunction is wrongfully issued. Gaeta Cromwell, Inc., v. Banyan Lakes Village, 523 So.2d 624 (Fla. 4th DCA), review denied, 531 So.2d 1353 (Fla. 1988). At least some attorneys' fees are a proper element of damages in a suit on an injunction bond. United Bonding Ins. Co. of Indianapolis, Ind. v. Presidential Ins. Co., 155 So.2d 635 (Fla. 2d DCA 1963). A trial court initially sets the amount of an injunction bond based in part upon the good faith representations of the parties. Parker.
In Parker, the supreme court contemplated an "orderly step-by-step procedure" in which either party could modify the injunction if the bond proved to be insufficient or excessive. Naturally, as the case develops and more evidence is discovered, the parties' initial good faith representations may no longer be accurate. Thus, it was not improper for the mall owners to bring their motion to modify the injunction after they had incurred additional attorneys' fees and other costs, notwithstanding their failure to attend the hearing on the temporary injunction or to initially contest the bond amount.[2]
The issue in this case is not whether the trial court abused its discretion in initially setting the bond amount, but whether it abused its discretion in refusing to modify the bond amount once the mall owners presented evidence of some additional anticipated costs and damages.[3] Although *371 we hold that the trial court abused its discretion in refusing to increase the amount of this nominal bond, we are not convinced by the mall owners' argument that the trial court must set this bond without weighing the Cozarts' high probability of prevailing on the merits.
The mall owners argue that the trial court's discretion in setting the bond amount should be confined to a single issue, i.e., the adverse party's anticipated reasonable costs and damages attributable to the injunction. They believe the amount of the bond must always fall within the monetary range established by the parties' good faith representations and evidence concerning this single issue. We disagree.
Although we believe the trial court should place heavy emphasis upon the adverse party's anticipated costs and damages and, in most cases, the amount of the bond should fall within that monetary range, the trial court does have the discretion to consider other factors. The additional factors may include the adverse party's chances of subsequently overturning the temporary injunction.
Before a trial court sets a bond below the range of anticipated costs and damages, the trial judge should be very confident that this extraordinary decision is completely appropriate under the circumstances of the case. Since a movant must establish a clear legal right to relief and a substantial likelihood of success before any temporary injunction is appropriate, Mid-Florida at Eustis, Inc. v. Griffin, 521 So.2d 357 (Fla. 5th DCA 1988), it is apparent that entitlement to a reduced bond requires an even stronger showing.[4] Obviously, the consideration given to the movant's high probability of success must be very circumspect because the bond will be useful only if the trial court's prediction proves incorrect.
In this case, we express no opinion whether the trial court should take the extraordinary step of allowing a bond below the amount of the range of anticipated costs and damages. That is a decision which must be made by the trial court based upon the evidence and upon the parties' good faith representations in that court.[5]
Reversed and remanded.
HALL, A.C.J., and PATTERSON, J., concur.
NOTES
[1] Cushman & Wakefield, Inc., manages the shopping mall, while Mr. Beresford and Mr. Peterson own the mall property. We refer to them as the mall owners for the sake of simplicity.
[2] An adverse party may move to dissolve or modify the injunction "at any time." Fla.R. Civ.P. 1.610(d). A movant may move to modify the injunction under the trial court's inherent authority to modify its own interlocutory orders.
[3] Several cases hold that a trial court abuses its discretion by initially setting a $1 bond on an injunction. Wasserman; Minimatic Components, Inc. v. Westinghouse Elec. Corp., 494 So.2d 303 (Fla. 4th DCA 1986); Marston v. Gainesville Sun Publishing Co., 314 So.2d 257 (Fla. 1st DCA 1975). These cases suggest that such a small bond is effectively no bond. In light of the attorneys' fees which will be recoverable against a bond in virtually any case in which a temporary injunction is wrongful, it can be forcefully argued that a $10 bond is also a per se violation of rule 1.610. In this case, however, we have no need to determine any minimum threshold above which the trial court must initially set a bond to comply with the rule.
[4] In most cases, for example, the trial court would probably set an inadequate bond if it merely multiplied the adverse party's anticipated costs and damages by the adverse party's probability of subsequently overturning the temporary injunction.
[5] We would note that a solvent adverse party demands a large bond at its own financial risk if a movant's chance of success is extremely high. Ultimately, the cost of the bond will become a taxable cost against the adverse party if it does not prevail. Thus, it may be prudent for the adverse party to weigh carefully the expense of the bond and the chances of success before it demands a large, expensive bond.