# PRECISION COMMUNICATION SERVICES, INC. v HAMC INDUSTRIES, INC.

## Case No. 90-11446

Thirteenth Judicial Circuit, Hillsborough County

February 6, 1991

## APPEARANCES OF COUNSEL

**Steve G. Schember, Esquire,** and **William C. Guerrant, Esquire,** for plaintiff.

**Andrew J. Salzman, Esquire,** and **Neil R. Covert, Esquire,** for defendant.

## OPINION OF THE COURT

GUY W. SPICOLA, Circuit Judge.

### ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE came before the Court on Plaintiff's Motion for Preliminary Injunction heard on January 3rd and 4th, 1991, with Steve

G. Schember, Esq. and William C. Guerrant, Esq., appearing on behalf of the Plaintiff, Precision Communication Services, and Andrew J. Salzman, Esq. and Neil R. Covert, Esq., appearing on behalf of the Defendant, HAMC Industries. Also appearing were Douglas Kinney, President of Precision Communication Services; Bob Gonzalez, Account Executive for Precision Communication Services; Robert Galloway, Equipment Service Manager for GTE; and Robert McGinnis, President of HAMC Industries. The Court, having taken testimony and having considered the law, hereby makes the following judgment granting the Plaintiff's Motion for Preliminary Injunction.

## FACTS

Precision Communication Services seeks to enjoin HAMC Industries from using the name "Precision Services" in its business pursuant to Florida Statutes § 495.151 and pursuant to common law trademark infringement. Precision Communication Services was formed in 1971 with its headquarters in Tampa as a business which repairs and refurbishes telephone equipment nationwide. Plaintiff's customers include most of the major telephone companies, including Bell South, GTE, Con-Tel, Central Telephone, Puerto Rico Telephone Company, and the Virgin Islands Telephone Company. Plaintiff has continuously used the name "Precision Communication Services" in its business since 1971.

In 1987, Plaintiff became aware of Defendant's company which also was in the business of refurbishing telephones and was also headquartered in Tampa. Defendant does business under the fictitious name "Precision Services." Both Plaintiff and Defendant compete for the same customers. On May 22, 1990, Plaintiff filed suit against Defendant alleging common law trademark infringement and violation of Florida Statutes § 495.151. Plaintiff seeks a preliminary injunction based on the grounds set forth in its complaint.

## DISCUSSION

The issue before the court is whether Plaintiff ("Precision Communication Services") is entitled to a preliminary injunction under Florida Statutes § 495.151 to enjoin Defendant from using the name "Precision Services" in its business. Florida Statutes § 495.151 states that:

[A]ll courts having jurisdiction . . . shall grant injunctions, to enjoin subsequent use by another of the same or any similar mark, trade name, label or form of advertisement if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark, trade name, label or

form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services. If the Plaintiff makes the required showing under Florida Statutes § 495.151, Florida's anti-dilution statute, it is entitled to injunctive relief.

The first requirement under section 495.151 is that there be prior use of a trade name by the party seeking injunctive relief. In this case, it has been stipulated by Precision Communication Services has used its name prior to the Defendant's use of the name "Precision Services."

The next requirement is that the names be the same or similar. In *Blanding Automotive Center, Inc. v Blanding Automotive, Inc.,* 568 SO.2d 490 (Fla. 1st DCA 1990), the court ruled that "Blanding Automotive Center, Inc." was similar enough to "Blanding Automotive, Inc." to warrant protection. Likewise, in *Safeway Stores, Inc. v Safeway Discount Drugs, Inc.,* 675 F.2d 1160 (11th Cir. 1982), the court ruled that the two names were similar enough to grant relief. Therefore, this court finds that "Precision Communication Services" and "Precision Services" are sufficiently similar to warrant protection under Florida Statutes § 495.151. This finding is strengthened by the fact that both Precision Communication Services and Precision Services are in the same business of refurbishing telephones.

According to the statute, the court must find that there exists a likelihood of either: 1) injury to business reputation; or 2) dilution of the distinctive quality of the trade name. As will be further explained in this order, the court finds that there exists both a likelihood of injury to business reputation and a likelihood of dilution of the distinctive quality of the name "Precision Communication Services."

Mr. Kinney, president of Precision Communication Services, testified that on a particular occasion one of his suppliers' drivers required cash or a certified check rather than the customary business check because the driver was under the impression that Precision Communication Services had written bad checks. Upon further investigation, it was discovered that Precision Services wrote the bad check and not Precision Communication Services. Mr. Kinney also testified that one of his sales representatives in the Dominican Republic refused to submit a bid on behalf of Precision Communication Services because the sales representative was upset that Precision Services had been soliciting work in the Dominican Republic. The sales representative believed that he was being squeezed out of the business and refused to believe that there could be two companies named "Precision" in Tampa doing the same kind of business. Based on this evidence, Precision Communica-

tion Services has shown not only a likelihood of injury to business reputation but also actual injury to business reputation.

Furthermore, Mr. Kinney stated that the monthly advertising expenses for Precision Communication Services are four to five thousand dollars. The expenditure of large sums of money in keeping a trade name before the public is a strong consideration for finding a likelihood of injury to business reputation. *See e.g. Marks v Cayo Hueso, Ltd.,* 437 So.2d 775, 777 (Fla. 3d DCA 1983); *See also Chase Medical Group v Palmetto Clinic Center,* 549 So.2d 1111 (Fla. 3d DCA 1989) (Palmetto Medical Center was entitled to a preliminary injunction since it first established prior use of its trade name and spent considerable resources in keeping its name before the public).

Unlike the clear findings of likelihood of injury to business reputation, the findings of likelihood of dilution of the distinctive quality of the trade name require a more detailed analysis. Dilution requires some proof that the use of the trade name decreases its commercial value. *Freedom Savings and Loan Association v Way,* 757 F.2d 1176 (11th Cir. 1985); *Gaeta Cromwell v Banyan Lakes Village,* 523 So.2d 624 (Fla. 4th DCA 1988). In *Freedom Savings,* the court stated:

> If the plaintiff holds a distinctive trademark, it is enough that the defendant has made significant use of a very similar mark. (citation). On the other hand, where the mark is a weak one that lacks much distinctiveness, the mere use of a similar mark will not establish loss of commercial value. (citation).

757 F.2d at 1186.

A threshold question that must be answered is whether "Precision Communication Services" is a distinctive and/or strong trade name. The *Freedom* court stated that "the strength of a mark depends on the extent of third party usage and the relationship between the name and the service or good it describes. If a name is used by third parties other than the infringer, then it is less strongly protected than it would otherwise be." 757 F.2d at 1182.

The Defendant presented evidence that in the Tampa Bay area there are 56 businesses listed in the business directories that include the name "Precision." Of these 56 businesses, four use the name "Precision" followed by another name and then followed by the word "Service" or "Services." Defendant argues that Precision Communication Services cannot be considered a distinct or strong trade name since there are so many companies using the name "Precision" in the Tampa Bay area. However, the *Safeway* court ruled that third-party use does not necessarily diminish the strength of a trade name. The court stated:

127

[W]e believe a further consideration relevant in determining the significance of third-party use is the entire name a third party uses, as well as the kind of business in which the user is engaged. Third-party users that incorporate the word Safeway along with distinctive additional words, or engage in a business different from that of Safeway Stores, may not diminish the strength of the Safeway mark.

675 F.2d at 1165.

The *Safeway* court ruled that the third-party users in that case did not significantly diminish the strength of the mark. In the present case, there is no indication that any of the 56 businesses with the name "Precision" are in the telephone equipment repair business, with the exception of Precision Communication Services and Precision Services. Therefore, the court finds that third-party use of the word "Precision" does not significantly diminish the strength of the trade name Precision Communication Services.

In order to properly determine the strength of a trade name, it is necessary to classify the name. Trademarks and trade names can be classified into four categories of distinctiveness, each one more heavily protected than the last: generic, descriptive, suggestive, and arbitrary or fanciful. *Gaeta Cromwell,* 523 So.2d at 626; *Freedom Savings and Loan,* 757 F.2d at 1182; *Bell Laboratories, Inc. v Colonial Products, Inc.,* 644 F. Supp. 542, 545 (S. D. Fla. 1986); *815 Tonawanda Street Corp. v Fay's Drug Co., Inc.,* 842 F.2d 643, 647 (2d Cir. 1988).

Generic marks refer to the genus of which the particular product or service is a species. *Gaeta Cromwell,* 523 So.2d at 626; *Freedom Savings and Loan,* 757 F.2d at 1182; *Bell Laboratories,* 644 F. Supp. at 545; *Tonawanda,* 842 F. 2d at 647. "Drugs" would be a generic term. *Tonawanda,* 842 F.2d at 647. The word "Consolidated" in Consolidated Electric Supply, Incorporated, would be another example of a generic name. *Consolidated Electric Supply, Inc. v Consolidated Electrical Distributors Southeast, Inc.,* 355 So.2d 853 (Fla. 3d DCA 1978).

Descriptive marks directly describe the qualities, intended purpose, or characteristics of the product or service. *Gaeta Cromwell,* 523 So.2d at 626; *Freedom Savings and Loan,* 757 F.2d at 1182; *Bell Laboratories,* 644 F. Supp. at 545; *Tonawanda,* 842 F.2d at 647. "Cut-Rate," for example, would be a descriptive term. *Tonawanda,* 842 F.2d at 647. "Vision Center," when used to describe a place to purchase eye wear, would be a descriptive name. *Vision Center v Opticks, Inc.,* 596 F.2d 111 (5th Cir. 1979) *cert. denied,* 444 U.S. 1016 (1980).

Suggestive marks, on the other hand, require imagination, thought, and perception to reach a conclusion as to the nature of the goods or

services. *Gaeta Cromwell,* 523 So.2d at 626; *Freedom Savings and Loan,* 757 F.2d at 1183; *Bell Laboratories,* 644 F. Supp. at 545; *Tonawanda,* 842 F.2d at 647. The term "Freedom" when used as the name of a savings and loan association suggests security and financial freedom. *Freedom Savings and Loan,* 757 F.2d at 1183. "Safeway" is suggestive of the reliability of retail grocery services. *Safeway,* 675 F.2d 1160. The term "Citibank" is suggestive of a modern or urban bank. *Citibank, N.A. v Citibanc Group, Inc.,* 724 F.2d 1540 (11th Cir. 1984).

The distinction between a suggestive mark and a descriptive mark is an important one since a descriptive mark can only be protected if it has acquired a secondary meaning. *Freedom Savings and Loan,* 757 F.2d at 1182. In distinguishing between a suggestive mark and a descriptive mark, the court in *Bell Laboratories* stated:

> A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of the goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

644 F. Supp. at 545 (quoting *Stix Products, Inc. v United Merchants and Manufacturers,* 295 F. Supp. 479, 488).

Finally, arbitrary or fanciful marks are words in common usage applied to a service or product unrelated to its meaning. *Gaeta Cromwell,* 523 So.2d at 626; *Freedom Savings and Loan,* 757 F.2d at 1183; *Tonawanda,* 842 F.2d at 647. "Sun Bank," for example, is an arbitrary mark when applied to banking services. *Sun Banks of Florida, Inc. v Sun Federal Savings and Loan Association,* 651 F.2d 311 (5th Cir. 1981).

Applying the preceding law to the facts of this case, the court finds that "Precision Communication Services," as applied to a telephone repair and refurbishing company, is a suggestive trade name. It suggests accuracy and meticulousness in repairing telephone systems. Since the trade name "Precision Communication Services" is suggestive, it should receive relatively strong protection. *See e.g. Safeway Stores,* 675 F.2d at 1165. The court finds that the trade name is strong enough such that loss of commercial value may be proved by the mere significant use of the name by the defendant. The court further finds that the Defendant has made significant use of a very similar name. Since the Plaintiff holds a distinctive trade name and since the Defendant has made significant use of a similar name, the required proof of loss of commercial value has been shown. *See e.g. Freedom Savings,* 757 F.2d at 1186. Therefore, it appears to the court that there exists a

likelihood of dilution of the distinctive qualify of the name "Precision Communication Services."

Defendant argues that, despite the statutory language, in order to obtain a preliminary injunction, the plaintiff must establish: (1) a likelihood of irreparable harm and the unavailability of an adequate remedy of law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any possible harm to the respondent, and (4) that the granting of a temporary injunction will not disserve the public interest. *Cordis Corp. of Prooslin,* 482 So.2d 486 (Fla. 3d DCA 1986); *Hillsboro News Co. v City of Tampa,* 544 F.2d 860.

In *Cordis,* the employer sought a temporary injunction to enforce a covenant not to compete. Despite the affirmance of the trial court's denial of an injunction, the court stated that the general rule of preliminary injunctions has been relaxed in cases of covenants not to compete so that irreparable harm may be presumed. 482 So.2d at 490.

In cases involving Florida Statutes § 495.151, the rule has been relaxed even more. All that is required to obtain a preliminary injunction under the statute is for the court to find that "there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark" of the prior user. *See e.g. Marks,* 437 So.2d 775; *Gaeta Cromwell,* 523 So.2d 624. *See also Blanding,* 568 So.2d 490 (permanent injunction granted under section 495.151 upon showing of likelihood of dilution). Thus, since the Plaintiff has made the required showing under section 495.151, it is entitled to a preliminary injunction.

Defendant also argues that Florida Statutes § 495.151 is not applicable to the present case because both Precision Communication Services and Precision Services perform similar services. Defendant argues that the purpose behind Florida's anti-dilution statute is to protect the prior user of a trade name where the subsequent user appropriates the name for a service or product dissimilar from that used by the prior user. However, case law has not precluded recovery under the anti-dilution statute merely because the prior user and the subsequent user provide the same services. The court in Tio Pepe, Inc. v El Tio Pepe de Miami Restaurant, Inc., 523 So.2d 1158, 1161 (Fla. 3d DCA 1988), stated that Florida's anti-dilution statute "has also been invoked where the prior and subsequent users provided identical services," (citing *Chassis Master Corp. v Borrego,* 610 F. Supp. 473, 379 (subsequent user's mark "Mister Chassis" for automotive repair services diluted prior user's mark "Chassis Master" for identical services)). *See also Tally-*

130

*Ho, Inc. v Coast Community College District,* 889 F.2d 1018, 1024 (11th Cir. 1989), where the court stated that section 495.151 permits a trademark owner "to prohibit *either a non-competitor's or competitor's use* of a similar mark if there is a likelihood of injury to business reputation or dilution of the mark's distinctive quality" (emphasis added). Therefore, Plaintiff is entitled to protection under Florida Statutes § 495.151 even though it provides the same services as Precision Services.

## CONCLUSION

Based on the preceding discussion of law and the evidence presented at the hearing, the court finds that Precision Communication Services is entitled to a preliminary injunction under Florida Statutes § 495.151. Based on its decision to grant relief under Florida's anti-dilution statute, the court does not need to address the issue of common law trademark infringement at this time. It is therefore ORDERED AND ADJUDGED that Defendant is enjoined from using the name "Precision Services" in its business. It is further ordered that both parties shall work out a compliance schedule. The compliance schedule shall provide a reasonable time for the Defendant to comply with this order. In the event the parties cannot agree to a compliance schedule among themselves, either party may apply to the court for the court to make a determination on compliance.

DONE AND ORDERED in Tampa, Hillsborough County, Florida this 6th day of February, 1991.