AMERICAN TELEVISION AND COM-
MUNICATIONS CORPORATION,
Plaintiff-Appellant,

v.

AMERICAN COMMUNICATIONS AND
TELEVISION, INC.,
Defendant-Appellee.

No. 85–3314.

United States Court of Appeals,
Eleventh Circuit.

March 2, 1987.

Robert R. Feagin, III, Tallahassee, Fla., Albert Robin, New York City, for plaintiff-appellant.

Robert Wayne Pearce, Ft. Lauderdale, Fla., for defendant-appellee.

Before RONEY, Chief Judge, CLARK, Circuit Judge, and FAIRCHILD *, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge:

## I

Plaintiff-appellant American Television and Communications Corporation, brought this action for common law unfair competition under Florida law, and for statutory unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), against defendant-appellee American Communications and Television, Incorporated. Jurisdiction was based on 28 U.S.C. § 1332 and § 1338(a). After a bench trial, the district court found in favor of the defendant. For the reasons set forth below, we will AFFIRM.

As found by the district court, the facts are as follows: Plaintiff is a wholly-owned subsidiary of Time, Inc. It began doing business under its corporate name in 1968, and now operates cable and over-the-air pay television systems, often under the acronym "ATC". Plaintiff's cable services include "superstations," movie-based "pay channel" services (e.g., HBO, CINEMAX and SHOWTIME), and advertiser supported services (e.g., ESPN, CNN, C–SPAN, LIFETIME, WEATHER CHANNEL). It also provides multipoint distribution services ("MDS"), a usually single channel service delivered by microwave, to specially equipped homes, and satellite master antenna systems ("SMATV") to customers hooked up to an antenna capable of receiving satellite signals. MDS and SMATV are primarily used in areas where cable service is unavailable. Plaintiff's services are provided to individual consumers through its more than 450 cable franchise operations in 31 states, of which approximately 30 franchises are in Florida. The franchises are either owned by or managed by plaintiff through franchise agreements. It is presently the largest distributor of cable and pay television in the United States.

Defendant is a publicly held corporation organized under Florida law, with its principal office and place of business in Gainesville, Florida. Through its subsidiaries, it is engaged in the operation of full and low power television stations or radio stations, SMATV, MDS, cable television systems, satellite uplinks, and specialized mobile radio telephone systems ("SMRS"). Defendant was originally incorporated under the name American Satellite and Television; its securities were offered to the public in 1982 through the over-the-counter market using the symbol "ASTV." To avoid or settle litigation with a similarly named company, defendant changed its name to American Communications and Television, Inc., on March 4, 1983. It has retained ASTV for use in the trading of its securities, and uses the acronym "ACTV" in its other business dealings.

Neither plaintiff nor defendant conducts its business with the service buying public under its corporate name. Instead, both parties negotiate franchises, licenses or contracts with governmental commissions, condominium associations, etc., who then supply consumers with services under the names of the parties' subsidiaries, affiliated companies, or franchises.

Some of plaintiff's subsidiaries' public information materials indicate the name of the individual cable franchise along with the words "a division of ATC," or other indication that plaintiff owns or operates the franchise. Often plaintiff also provides materials about itself to those with whom it

* Honorable Thomas E. Fairchild, Senior U.S. Circuit Judge, for the Seventh Circuit, sitting by designation.

actually negotiates its franchises, referring to itself as "American Television and Communications, a subsidiary of Time, Inc."

The district court further found that plaintiff has no franchise in direct competition with any franchise of defendant in Florida.

At trial, plaintiff introduced evidence of its advertising and press releases, as well as press articles in which it was mentioned, and the annual reports of Time, Inc. Plaintiff also introduced a letter (mistakenly addressed by the sender's secretary to the defendant) seeking employment based on an article about the plaintiff. The Executive Director of the Florida Cable Television Association (of which plaintiff is a member and defendant is not) also testified that when he read articles about the defendant's expanded activities in Florida, he at first thought they referred to plaintiff, as he was unfamiliar with defendant and its activities. When he realized that defendant was a different company, he contacted plaintiff about the articles concerning the defendant.

Based on this evidence, the district court found that plaintiff had failed to prove that its corporate name had acquired secondary meaning, and that even if that fact had been shown, it had failed to prove a likelihood of confusion between its products and those of the defendant on the part of consumers or those in the trade. Judgment was entered for the defendant.

## II

Although the plaintiff understandably would prefer to begin the analysis at its final step by focusing on the likelihood of confusion between the names of the parties, the district court properly began, as we do, with the inquiry whether plaintiff has proved that it has a protectable interest in its corporate name necessary for recovery under either a statutory or a state common law theory.[1] Only if plaintiff has proven such an interest need we reach the issue of whether it has also proved the likelihood of confusion between the two names, the other element needed for recovery. Cf. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1359 (9th Cir.1985).

Courts have traditionally divided trade names into four categories of protectability: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. Although meant to be mutually exclusive, these categories represent bands on a spectrum; "they tend to merge at their edges and are quite frequently difficult to apply." *Soweco, Inc. v. Shell Oil Company*, 617 F.2d 1178, 1183 (5th Cir.1980), cert. denied, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981); *The Vision Center v. Opticks, Inc.*, 596 F.2d 111, 115 (5th Cir.1979).

A generic name suggests the basic nature of the article or service. Most courts hold that a generic term is incapable of achieving trade name protection. *Vision Center*, 596 F.2d at 115. A descriptive term identifies a characteristic or quality of an article or service, and may become a protectable trade name only if it acquires a secondary meaning. *Id.* The distinction between descriptive and generic terms is

---

**1.** Relying on *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160 (11th Cir. 1982) ("Trade names for example, though protected at common law, cannot be registered under and are not protected by the Lanham Act."), and cases cited therein, the court below held that ATC had failed to state a cause of action under the Lanham Act because it sought to protect a trade name. In *Safeway,* however, the court went on to note "that Safeway Stores is protecting a valid registered service mark, not a mere trade name, so there is no question about the applicability of the Lanham Act." *Id.* at 1163. A more recent decision of this court appears to have held that an unregistered trade name can be protected by the Lanham Act where it is so closely associated with the goods sold as to be equivalent to a trademark, and where the name has acquired a secondary meaning. *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1512–13 (11th Cir.1984). Cf. *Walt-West Enterprises, Inc. v. Gannett Company, Inc.,* 695 F.2d 1050, 1054 n. 6 (7th Cir.1982) (although trade names are not registerable action for trade name infringement is nonetheless proper under § 43(a)). Because plaintiff was required to prove secondary meaning under either § 43(a) or Florida common law, we need not resolve any possible conflict between *Safeway* and *Conagra.*

one of degree. *Id.* at 115–16. A suggestive term suggests, rather than describes, a characteristic of the goods or services and requires an effort of the imagination by the consumer in order to be understood as descriptive; it requires no proof of secondary meaning to be protectable. An arbitrary or fanciful name bears no relationship to the product or service and is also protectable without proof of secondary meaning. *Id.* at 116.

 The district court held that, at best, plaintiff's name is descriptive because of the combination of generic and descriptive terms, and therefore plaintiff was required to prove secondary meaning. Indeed, plaintiff has conceded this point.[2] "In order to establish secondary meaning the plaintiff must show that the primary significance of the term in the minds of the consumer public is not the product but the producer." *Id.* at 118, *quoting Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). If the corporate name denotes to the consumer or purchaser "a single thing coming from a single source," then it has acquired secondary meaning. *American Heritage Life Insurance Co. v. Heritage Life Insurance Co.,* 494 F.2d 3, 12 (5th Cir.1974). The answer depends upon (1) the length and manner of its use; (2) the nature and extent of advertising, promotion and sales; (3) the plaintiff's efforts to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture. *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1513 (11th Cir.1984). A high degree of proof is necessary to establish secondary meaning for a descriptive term which suggests the basic nature of the product or service. *Vision Center,* 596 F.2d at 118; *American Heri-*

*tage Life,* 494 F.2d at 12. The existence of secondary meaning is a question of fact and a finding is to be evaluated under the clearly erroneous standard. *Conagra,* 743 F.2d at 1513; *Brooks Shoe Manufacturing Co., Inc. v. Suave Shoe Corp.,* 716 F.2d 854, 860 (11th Cir.1983); *Volkswagenwerk Aktiengesellschaft v. Rickard,* 492 F.2d 474, 477–78 (5th Cir.1974).

 The trial court's finding that plaintiff failed to prove secondary meaning is not clearly erroneous. Applying the proper test, it found that plaintiff does not deal with the ultimate consumer under its own name, and that it is better known to the industry under its acronymn, ATC. Although plaintiff claims that the court did not consider the meaning of its name to its suppliers and to members of the financial community, the court did consider all of plaintiff's evidence; it merely found it to be insufficient, in that plaintiff presented no more than speculation about what its name might mean to investors[3] and presented no evidence of the meaning of its name to any suppliers. Nor does plaintiff's evidence of its advertising, press releases, coverage in the media, Time, Inc.'s annual reports, and two misdirected missives convince us that the court's ruling "does not reflect the truth and the right of the case." *Armstrong Cork Co. v. World Carpets, Inc.,* 597 F.2d 496, 501 (5th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979). No surveys or other quantitative evidence were proffered. No testimony from plaintiff's franchise holders or from officials of governmental units was offered. Plaintiff's only testimonial evidence was that of an officer of a trade organization supported in large part by it and of which defendant was not a member, and the trier of fact was entitled to give it little weight. The district court's finding that this evidence failed to show that plaintiff's

---

**2.** Appellant in its reply brief for the first time argues that its name is suggestive and thus required no proof of secondary meaning. "Arguments raised for the first time in a reply brief are not properly before the reviewing court.... Thus, we do not consider this argument." *Unit-*

*ed States v. Oakley,* 744 F.2d 1553, 1556 (11th Cir.1984).

**3.** As plaintiff is a wholly-owned subsidiary, confusion on the part of possible investors in its parent company could only be marginally relevant.

corporate name had acquired a secondary meaning with any relevant group was not clearly erroneous. *See Vision Center,* 596 F.2d at 119 (testimony of seven of plaintiff's customers and evidence that plaintiff occasionally received mail addressed to other establishments with "vision" in their names held insufficient to establish secondary meaning); *Educational Development Corp. v. The Economy Company,* 562 F.2d 26, 30 (10th Cir.1977) (testimony of plaintiff's president and regional sales manager and plaintiff's receipt of two sales orders for defendant mistakenly addressed to plaintiff held insufficient, especially where buyers are sophisticated); *American Heritage Life,* 494 F.2d at 12–13 (plaintiff's annual reports, prospectuses, other corporate material, and press coverage not sufficient, and use of terms in corporate name by others in insurance industry militates against finding of secondary meaning); *cf. Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980) (two verbal inquiries as to whether defendant's pizza was related to plaintiff's sugar and one misaddressed letter held insufficient to establish likelihood of confusion); *but cf. Communications Satellite Corp. v. Comcet, Inc.,* 429 F.2d 1245, 1248 (4th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970) (district court's finding of secondary meaning affirmed where plaintiff spent a million dollars on promotion and recruiting of sales personnel; its sales were in the millions; its stock traded under its name; its press coverage was extensive; and its name was unique).

Because we affirm the judgment for defendant based on plaintiff's failure to prove secondary meaning, we need not reach the issue of whether the court's finding that plaintiff also failed to prove likelihood of confusion is clearly erroneous. *Conagra,* 743 F.2d at 1514 ("likelihood of confusion is a fact question"); *Security Center, Ltd. v. First National Security Centers,* 750 F.2d 1295, 1302 (5th Cir.1985) (no need to reach infringement unless mark found to be protectable). Although there is an obvious

superficial tendency to confuse the parties' names, we nevertheless note the paucity of plaintiff's evidence on this point. As found by the district court, plaintiff's name is not particularly distinctive, and its terms are often used in corporate names in the industry. There is no direct competition between the parties and advertising and soliciting are carried out under the names of their respective subsidiaries, franchises or divisions. Moreover, plaintiff's evidence of actual confusion did not involve consumers, those with whom it contracts to provide services to consumers, suppliers, or members of the investment community. "[B]oth parties sell their goods to discriminating purchasers [governmental entities, condominium associations, etc.] under conditions calculated to insure care in discerning the source of origin of the goods," *Industrial Nucleonics Corporation v. Hinde,* 475 F.2d 1197, 1199 (C.C.P.A.1973); *see also Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1206 (1st Cir.1983) (sophisticated purchasers and expensive goods militate against confusion), and the instances of confusion relied upon were short-lived, involved no customers, and resulted in no loss of sales. *Cf. Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1167 (11th Cir.1982) ("short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight … while confusion of actual customers of a business is worthy of substantial weight.").

We therefore conclude that the district court's findings were not clearly erroneous, and the judgment in favor of the defendant is AFFIRMED.