**INVESTACORP, INC.,**
Plaintiff–Appellant,

v.

**ARABIAN INVESTMENT BANKING CORPORATION (INVESTCORP) E.C.** d/b/a Investcorp and Investcorp International, Inc., a Delaware Corporation, Defendants–Appellees.

No. 89–6060.

United States Court of Appeals,
Eleventh Circuit.

May 29, 1991.

Richard Ross, Richard S. Ross, P.A., Miami, Fla., for plaintiff-appellant.

John Millian, Washington, D.C., Rudolph F. Aragon, Coffey, Aragon, Martin & Bulington, P.A., Miami, Fla., and Wesley Howell, Jr., Gibson, Dunn & Crutcher, Washington, D.C., for defendants-appellees.

Before JOHNSON and HATCHETT, Circuit Judges, and SMITH *, Senior Circuit Judge.

---

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

EDWARD S. SMITH, Senior Circuit Judge:

Plaintiff, Investacorp, Inc. (Investacorp), appeals the grant of summary judgment entered in favor of defendants, Arabian Investment Banking Corporation (Investcorp E.C.) and Investcorp, International, Inc. (Investcorp International) on the claims of service mark infringement and unfair competition. 722 F.Supp. 719. Because the undisputed facts show appellant does not have a protectable interest in its claimed service mark, we affirm the judgment of the United States District Court for the Southern District of Florida.

### Facts

Appellant, Investacorp, is a Florida corporation whose primary business is providing financial services as a broker/dealer and as a financial intermediary between individuals, corporations and institutions seeking investment opportunities. There are two appellees in this case: Investcorp E.C., the parent corporation, and its wholly owned subsidiary, Investcorp International. Investcorp E.C. is an investment bank headquartered in Bahrain which began doing business in the United States under that name in 1983. Investcorp International was created by Investcorp E.C. in November of 1986 to continue conducting the business of its parent in the United States. Hereinafter, the two co-appellees will be referred to as "Investcorp".

Investcorp filed for federal service mark registration in June of 1987. The Patent and Trademark Office (PTO) allowed the Investcorp service mark to pass for potential opposition to registration. Four months later, in October 1987, Investacorp filed for federal service mark registration. In February, 1988, Investacorp filed a Notice of Opposition with the Trademark Trial and Appeal Board of the PTO, opposing registration of the Investcorp service mark.

Later in 1988, Investacorp sued Investcorp on several counts of service mark infringement and unfair competition. The district court granted summary judgment in favor of defendant on all counts of the complaint, because it determined that plaintiff does not have a proprietary interest in the mark "Investacorp". Plaintiff appeals to this Court asserting that genuine issues of material fact are involved in the trial court's summary resolution of the claims.

### Issue

We must determine whether the district court's finding involved the resolution of an issue of material fact. As an appellate court, we must also determine the applicable law, independent of that interpretation rendered by the district court. If no issue of material fact was presented and the independently determined applicable law supports the grant of summary judgment ordered by the district court, then we must affirm.[1]

### Opinion

Plaintiff, Investacorp, alleges that defendants, Investcorp, unfairly competed by infringing on plaintiff's unregistered service mark. Appellant asserts that the district court should have found genuine issues of material fact presented in the following counts: Federal service mark infringement,[2] Florida common law service mark infringement, Florida common law unfair competition, and violation of the Florida anti-dilution law.[3] As the parties do in their briefs, we evaluate the federal service mark infringement claim as a measuring stick for the whole host of claims that appellant asserts. If the federal service mark claim fails in this case for the reason cited by the district court, that plaintiff had no proprietary interest in the "Investacorp" mark, then all of appellant's claims will fail.

### Prima Facie Service Mark Infringement

To prove service mark infringement in this case, plaintiff must prove (1) that

---

1. Fed.R.Civ.P. 56(c).

2. Lanham Act § 43(a), 15 U.S.C. § 1125(a) (1988).

3. Fla.Stat.Ann. § 495.151 (West 1988).

defendant used a term in commerce (2) in connection with their services (3) which is likely to be confused with the term (4) in which plaintiff possesses the right to use to designate their services.[4] Appellee concedes that elements (1) and (2) are present. The district court, however, found that plaintiff did not own the right to designate its services with the term "Investacorp" and hence had no protectable interest that could be infringed. Consequently, summary judgment was entered for defendant.

▪ In order for defendant to infringe on plaintiff's mark, plaintiff must have a protectable property interest in the mark "Investacorp".[5] Ordinarily, such an interest is derived when a business uses a mark to represent its services.[6] Each time a business uses a mark, it enhances the customer recognition of the mark and its association with the service, thereby inuring to the business greater rights in the mark.[7] However, a business does not automatically obtain rights in a mark by using it. A business will obtain rights in a mark upon first use only if the mark is "inherently distinctive."[8] If the mark is not inherently distinctive, a business may obtain rights in the mark when it attains a secondary meaning.[9] Therefore, to determine if and when plaintiff obtained rights in the mark "In-

vestacorp," we must determine if the mark "Investacorp" is inherently distinctive.

### The Categories of Distinctiveness

▪ There are four categories of distinctiveness in which a service mark may be classified.[10] In ascending order they are: (1) Generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful.[11] The demarcation between each category is more blurred than it is definite.[12] A term which suggests the basic nature of the service is generic.[13] The term "Milk Delivery" is an example of a generic service mark for a hypothetical milk delivery service.[14] A generic term is typically incapable of achieving service mark protection because it has no distinctiveness.[15] A descriptive term merely identifies a characteristic or quality of a service.[16] An example of a descriptive service mark might be "BarnMilk." Because a descriptive service mark is not inherently distinctive, it may be protected only if it acquires a secondary meaning.[17] The personal name component of a service mark such as "Barney's" to denote a milk delivery service is also considered not inherently distinctive and hence merely descriptive.[18] However, if the personal name mark acquires secondary meaning, it is afforded the strength of an inherently distinctive mark.[19] Marks which are descriptive of geographic location of the source of the service are treated in the

4. Lanham Act § 43(a), 15 U.S.C. § 1125(a) (1988).

5. *American Television & Communications Corp. v. American Communications & Television, Inc.,* 810 F.2d 1546, 1548, 1 U.S.P.Q.2d 2084, 2085 (11th Cir.1987).

6. 1 J. McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 16:1 (2d ed. 1984).

7. *Id.*

8. *Id.* at § 16:2.

9. *Id.*

10. *American Television,* 810 F.2d at 1548, 1 U.S.P.Q.2d at 2085.

11. *Id.*

12. *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1183, 207 U.S.P.Q. 278, 282 (5th Cir.1980), *cert.*

denied, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).

13. *American Television,* 810 F.2d at 1548, 1 U.S.P.Q.2d at 2086.

14. The examples given in this paragraph are believed to be a hypothetical service marks for a fictional milk delivery service. The examples are given strictly for pedagogical reasons and have no legal effect.

15. *American Television,* 810 F.2d at 1548, 1 U.S.P.Q.2d at 2086.

16. *Id.*

17. *Id.*

18. J. MCCARTHY, *supra note 6, § 13:2.*

19. *Id.*

same manner as personal name marks.[20] A suggestive term suggests the characteristics of the service "and requires an effort of the imagination by the consumer in order to be understood as descriptive" of the service.[21] "Barn-Barn" is an example of a suggestive term. Because a suggestive service mark is inherently distinctive, no proof of secondary meaning is required for it to be protectable.[22] "An arbitrary or fanciful [term] bears no relationship to the service."[23] Arbitrary and fanciful terms are also inherently distinctive, so they are protectable without proof of secondary meaning. "Barnbarnfish" is an example of an arbitrary or fanciful service mark.

### Distinctiveness Inquiry

The district court determined that the term "Investacorp" was descriptive. Because the distinctiveness categorization given a term is a question of fact,[24] we must determine whether the district court's finding involved a genuine issue of material fact.[25]

 Investacorp is a corporation in the business of advising their customers in corporate investment opportunities. Pursuant to a customer's desires, Investacorp sells stocks, bonds and other securities which are often initially issued by corporations. The two key formatives in the term "Investacorp" are "invest" and "corp". "Invest" is the verb "to commit (money) in order to earn a financial return,"[26] and "corp" is the widespread abbreviation for a corporation. It is beyond doubt that the term "Investacorp" bears a relationship to the type of services being offered by plaintiff. Hence, it cannot be an arbitrary or fanciful term.[27] The only two categories remaining that are eligible for service mark protection are the descriptive and suggestive categories. Thus, we must determine whether the mark is descriptive or suggestive.

 To determine whether a term is descriptive, third party usage by competitors is probative.[28] We reject appellant's argument that third party usage is not relevant to the distinctiveness inquiry because there is a plethora of authority embracing the relevancy of third party usage.[29]

The likelihood of prospective use by competitors is high. Both of the two formatives "invest" and "corp" pervade the lexicon of business terminology. Because the two formatives are indispensable to the investment services industry, we agree that it is very likely that competitors will need to use these terms.

Moreover, the popularity of actual use of the two key formatives also indicates that the mark is descriptive.[30] Over eighty competing broker-dealers use the word "invest" in their mark, and there are a handful of businesses who use some combination of the formatives "invest" and "corp" in their mark. We find the popularity of use by competitors is extreme.

Also probative of the descriptiveness of a mark is the idea that is conveyed to the observer by the plain dictionary definition

---

20. *Id.* at § 14:1.

21. *American Television,* 810 F.2d at 1549, 1 U.S.P.Q.2d at 2086.

22. *Id.*

23. *Id.*

24. *Soweco,* 617 F.2d at 1183 n. 12, 207 U.S.P.Q. at 282 n. 12.

25. Fed.R.Civ.P. 56(c).

26. WEBSTER'S NEW COLLEGIATE DICTIONARY, 603 (1979).

27. *See* J. MCCARTHY, *supra* note 6, § 11:2.

28. *Vision Center v. Opticks, Inc.,* 596 F.2d 111, 116, 202 U.S.P.Q. 333, 338 (5th Cir.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980).

29. *In re Bongrain Int'l Corp.,* 894 F.2d 1316, 1317, 13 U.S.P.Q.2d 1727, 1728 (Fed.Cir.1990); *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.,* 871 F.2d 590, 593, 10 U.S.P.Q.2d 1443, 1445 (6th Cir.1989); *Security Center, Ltd. v. First Nat'l Security Centers,* 750 F.2d 1295, 1298–1299, 225 U.S.P.Q. 373, 375–76 (5th Cir. 1985); *Telemed Corp. v. Tel-Med, Inc.,* 588 F.2d 213, 218, 200 U.S.P.Q. 427, 432 (7th Cir.1978).

30. *Vision Center,* 596 F.2d at 117, 202 U.S.P.Q. at 339.

of the formatives comprising the mark.[31] In this case, the two formatives combined in the term "Investacorp" literally convey to the observer that appellant is in the business of investing in corporations. Because the customer who observes the term can readily perceive the nature of plaintiff's services, without having to exercise his imagination, the term cannot be considered a suggestive term.[32] The only remaining categorization that is eligible for protection is the descriptive category. Accordingly, "Investacorp" must be merely descriptive.

Plaintiff relies on the inaction of the Patent and Trademark Office to inject an issue of fact into the district court's determination of distinctiveness. When the defendant submitted the "Investcorp" mark application, the PTO passed the mark on to publication. Because a finding of descriptiveness is one of the grounds for refusal of registration, appellant argues that the PTO must have decided that "Investcorp" was not merely descriptive; otherwise, the PTO would not have passed the mark on to publication according to Section 1209 of the TRADEMARK MANUAL OF EXAMINING PROCEDURE.[33] Moreover, appellant notes, the PTO opted to reject plaintiff's subsequent application to register "Investacorp" because the similar "Investcorp" application was pending, instead of on the ground that it was merely descriptive. Plaintiff argues that this indicates that the PTO found the similar mark also not descriptive.

Plaintiff asserts that these two facts negatively imply that the PTO found that both marks, "Investacorp" and "Investcorp," were not merely descriptive. Consequently, because it is proper to defer to any determination made by the agency "entrusted with the duty of administering the Lanham Act," appellant argues that we must accept the determination made by the PTO in accord with *Wynn Oil Co. v. Thomas*.[34]

The soft spot in appellant's argument is that there is no recorded finding by the PTO that either service mark was not descriptive. Consequently, all that this Court can do is guess at what the PTO's determinations were while evaluating the merit of each mark. We do not know whether the PTO even considered the descriptiveness of either mark. Although we will bestow proper respect to the determinations of the PTO, we will not defer to an ethereal determination that is not affirmatively stated by the administrative agency. Therefore, withstanding the implications that appellant points out, the finding that "Investacorp" is merely descriptive involved no genuine issue of material fact. Consequently, in heeding the proposition that the descriptiveness category encompasses a broad range,[35] the term "Investacorp" is merely descriptive and hence is not inherently distinctive.

### Secondary Meaning

Because the term is not inherently distinctive, for appellant to have a protectable interest in the term "Investacorp," it must have attained secondary meaning before the date that appellee used the similar term "Investcorp".[36] The district court determined that the term "Investacorp" did not attain secondary meaning by the time appellees first used it. Because the existence of a secondary meaning is a question of fact,[37] we determine whether this determination required the resolution of a genuine factual issue.

31. *Id.* at 116, 202 U.S.P.Q. at 338.

32. *Id.*

33. (6th rev. 1986).

34. 839 F.2d 1183, 1190, 5 U.S.P.Q.2d 1944, 1949 (6th Cir.1988).

35. *Vision Center*, 596 F.2d at 116, 202 U.S.P.Q. at 338.

36. *Co–Rect Products, Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1330, 228 U.S.P.Q. 429, 431 (8th Cir.1985).

37. *Aloe Creme Laboratories, Inc. v. Milsan, Inc.*, 423 F.2d 845, 849, 165 U.S.P.Q. 37, 41 (5th Cir.) *cert. denied*, 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90, *reh'g denied*, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 95 (1970).

Because secondary meaning must attach to the mark before appellee first used the mark, we must determine the date that appellee first used the mark "Investcorp". The district court decided that appellee first used the mark in March of 1983. Appellant disputes this finding by pointing out certain facts. Investcorp E.C. first began using the service mark in March of 1983. In June of 1987, Investcorp E.C. created a subsidiary entitled Investcorp International to be responsible for conducting all of Investcorp's business in the United States. Investcorp E.C., the parent, licensed to Investcorp International the right to use the "Investcorp" service mark in the United States.

Appellant asserts that because the parent, Investcorp E.C., intended not to use the mark in the United States, it had abandoned the use of the mark. The argument goes that the previous use by the parent corporation between 1983 and 1987 does not count because it had abandoned the mark. Hence, appellant argues that appellee's first use did not occur until 1987, when the subsidiary, Investcorp International, first began using the mark in the United States.

■■■ To establish abandonment, appellant must prove (1) nonuse and (2) intent not to resume use.[38] Appellant's argument is disingenuous because although Investcorp E.C. did not intend to use the mark in the United States, it intended Investcorp International, its wholly-owned subsidiary, to continue the use of the mark in its place. All that occurred was a reorganization of Investcorp's structure; the intent was for Investcorp to continue to use the mark through its subsidiary, Investcorp International. Therefore, Investcorp never intended to cease using the "Investcorp" mark and there was no abandonment. Thus, Investcorp's first use of their mark occurred in March of 1983, and the secondary mean-

ing of "Investacorp" must attach by that date.

■■■ Secondary meaning is the connection in the consumer's mind between the mark and the provider of the service.[39] Plaintiff has the burden of sustaining a high degree of proof in establishing a secondary meaning for a descriptive term.[40] This requisite high degree of proof must be considered by the court when ruling on a motion of summary judgment.[41] Absent consumer survey evidence, as is the case here, four factors can be considered in determining whether a particular mark has acquired a secondary meaning:

(1) [T]he length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service].[42]

Appellant began designating their services with the "Investacorp" mark in January of 1978. Thus, the length of appellant's use of the mark was five years prior to the appellee's use of their mark. However, there is nothing significant about the manner of appellant's use of the mark, other than appellant merely "displayed its service mark on nearly all of its transactional documents."

The nature and extent of appellant's advertisement and promotion and its achievement of a conscious connection in the public mind between the mark and the appellant's business during the relevant time period is far short of spectacular. During this period, appellant's advertising expenditures did not exceed one-hundred dollars per month. Although, appellant emphasizes that they had expansive growth and

**38.** *E. Remy Martin & Co., S.A. v. Shaw–Ross International Imports, Inc.,* 756 F.2d 1525, 1532, 225 U.S.P.Q. 1131, 1136, *reh'g denied, en banc,* 765 F.2d 154 (11th Cir.1985).

**39.** *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1536 n. 14, 1 U.S.P.Q.2d 1161 (11th Cir.1986).

**40.** *Vision Center,* 596 F.2d at 119, 202 U.S.P.Q. at 341.

**41.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**42.** *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1513, 224 U.S.P.Q. 552, 555 (11th Cir.1984).

showed a high ratio of sales dollars to advertising dollars during the relevant period, this fact does not indicate that appellant's bantam advertising campaigns made major inroads to the consumer psyche.

The evidence that the public actually identifies the mark with appellant's business is also lacking. Although instances of consumer confusion are probative of secondary meaning,[43] the few isolated instances cited by appellant are not adequate to present a genuine issue of material fact. Consequently, we agree that the undisputed facts show that the mark "Investacorp" did not acquire secondary meaning before the end of the relevant time period.

*Conclusion*

In order to prove all of its claims, appellant must establish ownership of the right to use the mark to designate its services. Because the undisputed facts show that the "Investacorp" mark is not inherently distinctive, a protectable interest does not attach until the mark acquires a secondary meaning. The district court found that the undisputed facts established that "Investacorp" did not acquire secondary meaning before appellee commenced use of their similar service mark, "Investcorp". Therefore, appellant does not own a protectable interest in the "Investacorp" service mark. We agree with the district court's view of the evidence. Accordingly, as a matter of law, appellee did not infringe on the appellant's service mark or unfairly compete with appellant because appellant never owned a protectable interest in the mark, "Investacorp", and appellee is entitled to judgment. *Affirmed.*

---

43. McCarthy, *supra* note 6, § 15:3.