**METRO BROKERS, INC., Plaintiff,**

v.

**Merle TANN, d/b/a "Metpro Brokers", Defendant.**

**Civ. A. No. 93–B–270.**

United States District Court, D. Colorado.

March 1, 1993.

Scott S. Havlick, Donald A. Degnan, Holland & Hart, Denver, CO, for plaintiff.

Merle Tann, pro se.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

### I.

Plaintiff Metro Brokers, Inc. (Metro Brokers) requests a preliminary injunction en-

joining defendant Merle Tann (Tann) from using the name "Metpro Brokers" in connection with his real estate brokerage business. On February 9, 1993 I entered a temporary restraining order (TRO) enjoining Tann and anyone associated with him from using the name "Metpro Brokers". I extended the duration of this TRO until 5:00 p.m. March 1, 1993. I held a preliminary injunction hearing on February 18, 1993. I will grant the preliminary injunction and enjoin Tann from using the name "Metpro Brokers" in connection with his real estate business.

Metro Brokers is suing Tann under the Lanham Act for trademark infringement (15 U.S.C. § 1114(1)(a)) and false designation of origin (15 U.S.C. § 1125(a)). Metro Brokers also alleges state law claims for trade name infringement, unfair competition, and deceptive trade practices. I have original jurisdiction over Metro Brokers' federal claims, 28 U.S.C. § 1338(a) and (b), and supplemental jurisdiction over Metro Brokers' state law claims, 28 U.S.C. § 1367(a). Because Tann resides in this district and the events giving rise to Metro Brokers' claims occurred in this district venue is proper. 28 U.S.C. § 1391(b). Below are my findings of fact, conclusions of law, and order enjoining Tann from using the name "Metpro Brokers":

## II.

Metro Brokers is a trade association composed of stock holding members who offer real estate brokerage services in the Denver metropolitan area. Metro Brokers offers advertising, among other professional services, to its members. Metro Brokers does not broker real estate. Rather it lends its name to its members who own and operate their own real estate brokerage businesses. Members affiliate with Metro Brokers to take advantage of Metro Brokers' widespread advertising and to give customers the appearance that they are affiliated with an established, multi-agent real estate brokerage firm.

Affiliation with Metro Brokers enhances a real estate agent's advertising efforts. When a member uses the name "Metro Brokers, Inc." in his advertisements he is effectively advertising for every other member of Metro Brokers. Each advertisement using the name "Metro Brokers, Inc." increases Metro Brokers' name recognition for all other members. An individual member using the name "Metro Brokers, Inc." alone could not achieve this same level of name recognition. Each member also benefits from Metro Brokers' enforcement of its by-laws which provide for expulsion from the association if a member engages in conduct which harms Metro Brokers' goodwill and reputation. (See exhibit 3.) Metro Brokers actively enforces this by-law. As a result, Metro Brokers has members who conduct themselves professionally. Consequently, Metro Brokers and its members have achieved a good reputation in the Denver area.

Metro Brokers owns registered service mark no. 1,423,233 (mark '233) which is a red octagon with the name "Metro Brokers, Inc." imprinted inside of the octagon. Metro Brokers and its members: (1) use this red octagon in their advertising; (2) independent of the octagon, use the words "Metro Brokers, Inc." in all forms of their advertising, including television commercials, radio advertisements, print media, billboards, bus stop benches, and yard signs; (3) have used mark '233 and the words "Metro Brokers, Inc." in their advertising since Metro Brokers' incorporation in 1976; (4) have expended substantial sums in advertising and using the name "Metro Brokers, Inc." in their advertising; and (5) use the name "Metro Brokers, Inc." in all forms of their advertising to achieve name recognition. As a result of Metro Brokers' and its members' continuous and long use of the name "Metro Brokers, Inc." the public has come to understand that a real estate broker using the name "Metro Brokers, Inc." is associated with Metro Brokers.

Tann offers real estate brokerage services in the Denver metropolitan area. From November 21, 1991 until December 3, 1992 Tann was a shareholder in and a member of Metro Brokers. During this time, Metro Brokers authorized Tann to use mark '233 and the words "Metro Brokers, Inc." in connection with his real estate business.

Tann uses aggressive sales tactics which offend some customers. Several customers

have complained about Tann's sales tactics to the Colorado Real Estate Commission and Metro Brokers. These complaints caused Metro Brokers to expel Tann from the association on December 3, 1992. On December 4, 1992 Metro Brokers notified Tann that he must cease using mark '233 and Metro Brokers' name in his business. After Tann received this notice he changed the name of his business to "Metpro Brokers", the name his business had used before he joined Metro Brokers. Tann did not use a symbol similar to the red octagon registered under mark '233. Tann used the name "Metpro Brokers" to list property in the MLS and on his business cards until I enjoined him from using it on February 9, 1993.

When Tann was using the name "Metpro Brokers", a prospective home buyer, Kimberly Bradford (Bradford), thought he was associated with Metro Brokers. When Bradford informed Tann that she did not want to sign a buyer-broker agreement Tann became angry with her. Because of Tann's rude behavior, Bradford's husband informed his friends and associates to avoid doing business with Metro Brokers. Bradford also called Metro Brokers to complain about Tann. While Tann claims that he made it clear to customers that he was not associated with Metro Brokers, he admits that some customers initially would associate him with Metro Brokers. I find that Bradford and several other customers were actually confused concerning Tann's association with Metro Brokers.

■ Mark '233 does not register the words "Metro Brokers, Inc." alone. Nor does mark '233 register the red octagon alone. Rather, mark '233 registers a red octagon with the words "Metro Brokers, Inc." interposed inside of the octagon. After Metro Brokers revoked Tann's right to use mark '233 he never used a red octagon or symbol confusingly similar to the red octagon. Rather, his use of the words "Metpro Brokers" is the alleged infringing conduct at issue here. Metro Brokers argues that "Metpro Brokers" is confusingly similar to their name "Metro Brokers, Inc.". Because this term alone is unregistered, to qualify for protection under the Lanham Act and the common law it must be suggestive, arbitrary

or fanciful, or descriptive with a secondary meaning. *Union Nat. Bank, Laredo v. Union Nat. Bank, Austin,* 909 F.2d 839, 844 (5th Cir.1990). In classifying this term a finder of fact must consider it with reference to the services it promotes. *Union Nat. Bank,* 909 F.2d at 846. Metro Brokers promotes the real estate brokering services of its members. The adjective "metro" identifies "brokers" as real estate agents who operate in a metropolitan area. This name gives the customer a sense that a Metro Brokers member has a city-wide real estate practice with many properties at his disposal. Accordingly, the term "Metro Brokers, Inc." serves a descriptive function.

Moreover, the name "Metro Brokers, Inc." describes more than the basic nature of the services offered by a Metro Brokers member. It gives a customer the impression that this broker knows the city and can locate many properties in this region. Also, the name "Metro Brokers, Inc." bears a relationship to the services offered by a Metro Brokers member. Moreover, this name requires little imagination to understand that it describes real estate brokering services.

The name "Metpro Brokers" appears and sounds similar to "Metro Brokers, Inc.". There is a strong probability that Tann intentionally used a name similar to "Metro Brokers, Inc." because of his prior association with Metro Brokers and his desire to continue to capitalize on Metro Brokers' advertising and good reputation. Furthermore, Tann used the name "Metpro Brokers" on his business cards and in MLS listings. Metro Brokers' members likewise use "Metro Brokers, Inc." in this manner. Finally, purchasers use little care in selecting a real estate agent. Bradford stated that she refused to sign a buyer-broker contract with Tann because she preferred to have several agents working for her. Bradford also indicated that a house's location, appearance, condition, and price drive a home purchaser's selection of a home. Based on her testimony I find that a real estate agent has little bearing on a house purchaser's selection of a home.

Tann's use of the name "Metpro Brokers" threatens Metro Brokers' good reputation.

Unless restrained from using the name "Metpro Brokers" it is likely that Tann's aggressive sales tactics will reflect badly on Metro Brokers. If enjoined from using the name "Metpro Brokers" Tann will have to change his business cards, stationary, several real estate listings, signs, and certain real estate registrations with the state. These changes will cost him less than $1,000.00.

### III.

■ To obtain a preliminary injunction the moving party must establish that: (1) there is a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury unless the injunction issues; (3) the threatened injury to it outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *Longstreth v. Maynard*, 961 F.2d 895, 902 (10th Cir.1992). Where, as here, the moving party makes a strong showing as to the second, third, and fourth elements the first factor is relaxed to require him to raise "questions so serious, substantial, difficult, and doubtful as to make them fair grounds for litigation and thus for more deliberate inquiry". *Longstreth*, 961 F.2d at 903. Nevertheless, because a preliminary injunction is an extraordinary remedy the right to relief must be clear and unequivocal. *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir.1991).

### A.

■ Metro Brokers raises such serious, substantial, difficult, and doubtful questions concerning its section 43(a) Lanham Act (15 U.S.C. § 1125(a)) and common law claims that they are fair game for litigation and further inquiry. These claims have common elements. *See Union Nat. Bank*, 909 F.2d at 842 n. 6. To prove these claims Metro Brokers must show that the term "Metro Brokers, Inc." is descriptive, has a secondary meaning, and that Tann used a confusingly similar name to promote his services. *See American Television v. American Communications*, 810 F.2d 1546, 1548 (11th Cir. 1987) (Section 43(a) Lanham Act claim); *Wood v. Wood's Homes, Inc.*, 33 Colo.App. 285, 519 P.2d 1212, 1214 (1974) (common law claims).

■ A name is descriptive if it identifies a characteristic or quality of a service. *American Television*, 810 F.2d at 1548. Whether a name is descriptive is a question of fact. *Union Nat. Bank*, 909 F.2d at 846; *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1523 (11th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991). The name "Metro Brokers, Inc." serves a descriptive function. Although not a certainty, a reasonable finder of fact could find that the name "Metro Brokers, Inc." is a descriptive term.

■ To qualify for protection under section 43(a) of the Lanham Act and the common law, a descriptive name must have a secondary meaning. *American Television*, 810 F.2d at 1548; *Wood*, 519 P.2d at 1214. A name acquires a secondary meaning when it has been used so long and exclusively with respect to the user's services that the purchasing public has come to understand that the services are coming from a single source. *See J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1470 (10th Cir.1985); *American Television*, 810 F.2d at 1549. Secondary meaning is also a question of fact. *American Television*, 810 F.2d at 1549; *Investacorp*, 931 F.2d at 1524. Whether a term has acquired a secondary meaning depends on: (1) the length and manner of its use; (2) the nature and extent of the plaintiff's advertising, promotion, and sales; (3) the plaintiff's efforts to promote a conscious connection in the public's mind between his name and the plaintiff's business; and (4) the extent to which the public actually identifies the name with the plaintiff's business. *American Television*, 810 F.2d at 1549; *Investacorp*, 931 F.2d at 1525. A high degree of proof is needed to prove the secondary meaning of a descriptive term. *Investacorp*, 931 F.2d at 1525.

Metro Brokers and its members have used the name "Metro Brokers, Inc." in all aspects of their advertising since 1976. Metro Brokers and its members achieved name recognition through their long and constant use of the name "Metro Brokers, Inc." in their far-

reaching advertising. Thus, the consuming public identifies a real estate agent using the name "Metro Brokers, Inc." with Metro Brokers. Although it is not a certainty, a reasonable trier of fact could find that the name "Metro Brokers, Inc." has a secondary meaning.

 There is a strong likelihood of confusion between the names "Metpro Brokers" and "Metro Brokers, Inc.". The following factors are helpful, but not dispositive, in determining whether there is a likelihood of confusion between the names: (a) the degree of similarity between the names in appearance, pronunciation of the words used, verbal translation of the pictures or designs used, and suggestion; (b) the intention of the actor in adopting the design; (c) the relation in use and manner of marketing between goods or services marketed by the actor and those marketed by the other; and (d) the degree of care likely to be exercised by purchasers. *Beer Nuts, Inc. v. Clover Club Foods Co.,* 805 F.2d 920, 925 (10th Cir.1986). Similarities are to be weighed more heavily than differences. *Beer Nuts,* 805 F.2d at 925.

The names are similar in appearance, pronunciation and verbal translation. Also, Tann's prior relationship with Metro Brokers raises a strong inference of intentional copying. *Beer Nuts,* 805 F.2d at 927. Furthermore, Tann used the name "Metpro Brokers" in a manner similar to that used by Metro Brokers and its members. Also, consumers use little care in selecting a real estate agent. Finally, several customers were actually confused whether Tann was associated with Metro Brokers when he was using the name "Metpro Brokers". I conclude, therefore, that there is a strong probability that a reasonable finder of fact would find that there is a likelihood of confusion between "Metro Brokers, Inc." and "Metpro Brokers".

At a minimum Metro Brokers, raises serious, substantial, difficult, and doubtful questions concerning each element of its section 43(a) Lanham Act and the common law claims. A reasonable finder of fact could find in Metro Brokers' favor on each of the essential elements of its section 43(a) Lanham Act and common law claims. Metro

Brokers has made a sufficient showing that these claims are fair game for litigation and more deliberate inquiry. Therefore, under *Longstreth's* relaxed standard, Metro Brokers has a substantial likelihood of succeeding on the merits of its section 43(a) Lanham Act and common law claims.

### B.

 Where there is a high probability of confusion, irreparable injury which cannot be fully compensable in damages tends to result. *Paco Rabanne v. Norco Enterprises, Inc.,* 680 F.2d 891, 894 (2d Cir.1982). Accordingly, the likelihood of damage to reputation and good will entitles a plaintiff to preliminary relief. *Paco Rabanne,* 680 F.2d at 894.

I found that Tann's use of the name "Metpro Brokers" threatened Metro Brokers' and its members' reputations. When Tann was affiliated with Metro Brokers his aggressive sales tactics caused several customers to complain to the Colorado Real Estate Commission. Bradford's husband discouraged people from dealing with Metro Brokers. There is a high probability that "Metpro Brokers" will be confused with "Metro Brokers, Inc.". This confusion is especially threatening to Metro Brokers and its members because of Tann's aggressive sales tactics. Thus, if Tann is allowed to use the name "Metpro Brokers", Metro Brokers' and its members' reputations are likely to be irreparably harmed. Moreover, this harm to Metro Brokers' and its members' reputations cannot be remedied adequately with money damages. I conclude that unless Tann is enjoined from using the name "Metpro Brokers", Metro Brokers and its members will sustain irreparable harm which money damages will not remedy adequately.

### C.

Metro Brokers' reputation will be harmed unless I enjoin Tann from using the name "Metpro Brokers". Tann on other hand may continue to offer real estate brokering services under another name. The costs Tann will incur if I enjoin him from using the name "Metpro Brokers" are insignificant compared

to the loss of reputation and goodwill Metro Brokers and its members will experience if Tann is not enjoined from using the name "Metpro Brokers". Thus, the harm to Metro Brokers' reputation decidedly outweighs the harm to Tann if an injunction issues.

### D.

 The public interest will be furthered by enjoining Tann from using the name "Metpro Brokers". Trademarks and names serve the consuming public by distinguishing a product or service which in turn lowers consumer search costs. *Union Nat. Bank*, 909 F.2d at 844. Trade name protection also discourages free-riders from capitalizing on a name which a competitor has identified with his product or service. *Union Nat. Bank*, 909 F.2d at 844. The public, which has come to rely on the name "Metro Brokers, Inc." to identify real estate agents with good reputations, has an interest in protecting Metro Brokers' name. Therefore, the public interest will be served by preventing Tann's unauthorized use of Metro Brokers' name.

### E.

Metro Brokers' existing $1,000.00 bond is adequate to compensate Tann in the event it is determined that this injunction was entered wrongfully. Therefore, I approve Metro Brokers' existing bond as security for this preliminary injunction.

Accordingly IT IS ORDERED that Tann, his agents, servants, employees, franchisees, representatives, successors, assignees, those in privity with him, and all others in active concert or participation with him are prohibited from using the name "Metpro Brokers" or any confusingly similar name, reproduction, counterfeit, copy, or colorable imitation, either alone or in combination with any other designation in any form or manner in connection with real estate brokering or any related service. Unless otherwise ordered, this preliminary injunction shall expire upon the final resolution of Metro Brokers' request for a permanent injunction.